**Toshia WATTERSON, a/k/a Tasha Toshia Watterson, Appellant**

v.

**UNITED STATES of America**

No. 98–1596.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a)
March 2, 2000.

Opinion Filed July 10, 2000.

Clayton A. Sweeney, Jr., Argued, Roger Schrading, Krasner & Restrepo, Philadelphia, PA, for Appellant.

J. Alvin Stout, III, Assistant United States Attorney, Office of the United States Attorney, Philadelphia, PA, for Appellee.

Before: ROTH, BARRY and STAPLETON, Circuit Judges.

## OPINION OF THE COURT

BARRY, Circuit Judge.

This appeal primarily requires us to decide whether the District Court erred in sentencing Toshia Watterson as if she had been convicted of, or had stipulated to, distributing a controlled substance within 1000 feet of a school zone, when she had not. We find that the District Court erred in so doing and, accordingly, will vacate the sentence and remand for resentencing.

## I

Beginning in 1995, Toshia Watterson ("Watterson") was involved with the "Massey Organization," a sophisticated drug trafficking ring in and around Philadelphia, Pennsylvania. Led by Derrick Massey, with Delbert Massey acting as his brother's right-hand man, the Massey Organization distributed drugs within 1000 feet of various public and parochial schools, among other locations. More specifically, the Organization obtained bulk quantities of marijuana and cocaine, broke them down into lesser quantities, and distributed the drugs primarily through three local bars—the Hideaway Lounge, the 20 Plus Club and the Commodore Lounge—all of which were located near those schools. Watterson, the girlfriend of Derrick Massey, at various times worked at all three of the aforementioned bars, and participated in the drug trafficking operation.

On September 30, 1997, a thirty-one count indictment was returned against Watterson and nine others, including the Massey brothers, based on their involvement in and with the Massey Organization. Specifically, Watterson was charged with conspiracy to distribute cocaine and marijuana, in violation of 21 U.S.C. § 846 (Count One); possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (Count Eighteen); possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (Count Nineteen); and criminal forfeiture, pursuant to 21 U.S.C. § 853 (Count Twenty–Six). She was not charged with violating or conspiring to violate 21 U.S.C. § 860, which prohibits drug distribution "in or near" schools.[1]

1. 21 U.S.C. § 860, in its current form, states, as relevant here:

 *Distribution or manufacturing in or near schools and colleges*

 Any person who violates section 841(a)(1) ... by distributing, possessing with intent to distribute, or manufacturing a controlled substance in or on, or within one thousand feet of, the real property comprising a public or private elementary, vocational, or secondary school or a public or private college, junior college, or university, or a playground, or housing facility owned by a public housing authority, or within 100 feet of a public or private youth center, public swimming pool, or video arcade facility, is (except as provided in subsection (b) of this section) subject to (1) twice the maximum punishment authorized by section 841(b) of this title; and (2) at least twice any term of

On April 3, 1998, Watterson pled guilty to conspiracy to distribute cocaine and marijuana (Count One) and forfeiture (Count Twenty–Six). The other charges against her were subsequently dismissed.

On June 26, 1998, Watterson was sentenced to fifteen months in prison.[2] At sentencing, Watterson challenged the computation of what was to become her guideline imprisonment range, specifically the use of offense guideline § 2D1.2 of the United States Sentencing Guidelines,[3] which, as relevant here, deals with drug offenses committed near "protected locations" such as schools and which, if applied, would result in a base offense level two levels higher than that called for under § 2D1.1.[4] Watterson argued that § 2D1.2 was inapplicable because Appendix A (the "Statutory Index") of the Guidelines compels the use of § 2D1.1 rather than § 2D1.2 as the guideline by which to set the base offense level when, as here, there was a 21 U.S.C. § 846 conspiracy to violate only 21 U.S.C. § 841(a)(1) and not 21 U.S.C. § 860. The District Court concluded, as had the Presentence Investigation Report, that § 2D1.2 was "applicable" but did not explain why it reached that

conclusion. Presumably, it believed, as some other courts believe, that it was entitled to consider all relevant conduct in determining which offense guideline section should be selected in the first instance, and because the drug conspiracy operated in a school zone, § 2D1.2, the section listed in the Statutory Index as applicable to such violations, was most appropriate. The government agreed. We disagree.

## II

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3742(a) and (e), and 28 U.S.C. § 1291. We review the District Court's legal construction of the Sentencing Guidelines *de novo*. *United States v. Johnson*, 199 F.3d 123, 125 (3d Cir.1999).

The issue presented, *i.e.* whether § 2D1.2, rather than § 2D1.1,[5] is the applicable offense guideline section for a defendant who has not stipulated or pled guilty to, or been convicted at trial of, a violation of § 860 has caused a circuit split. In sum, the Fourth, Fifth, Ninth and Eleventh Circuits ("the majority") do not per-

---

supervised release authorized by section 841(b) of this title for a first offense[.]

**2.** Based on a total offense level of fourteen and a criminal history category of 1, Watterson's guideline imprisonment range was fifteen to twenty-one months.

**3.** *See* United States Sentencing Commission, *Guidelines Manual* ("U.S.S.G.") (Nov.1997).

**4.** *§ 2D1.2. Drug Offenses Occurring Near Protected Locations or Involving Underage or Pregnant Individuals; Attempt or Conspiracy*

(a) **Base Offense Level** (Apply the greatest):
(1) **2** plus the offense level from § 2D1.1 applicable to the quantity of controlled substances directly involving a protected location or an underage or pregnant individual; or
(2) **1** plus the offense level from § 2D1.1 applicable to the total quantity of controlled substances involved in the offense; or
(3) **26**, if the offense involved a person less than eighteen years of age; or

(4) **13**, otherwise.

**5.** *§ 2D1.1. Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy*

(a) **Base Offense Level** (Apply the greatest):
(1) **43**, if the defendant is convicted under 21 U.S.C. § 841(b)(1)(A), (b)(1)(B), or (b)(1)(C), or 21 U.S.C. § 960(b)(1), (b)(2), or (b)(3), and the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance and that the defendant committed the offense after one or more prior convictions for a similar offense; or
(2) **38**, if the defendant is convicted under 21 U.S.C. § 841(b)(1)(A), (b)(1)(B), or (b)(1)(C), or 21 U.S.C. § 960(b)(1), (b)(2), or (b)(3), and the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance; or
(3) the offense level specified in the Drug Quantity Table set forth in subsection (c) below.

mit the use of § 2D1.2 in such a case, *see United States v. Crawford,* 185 F.3d 1024 (9th Cir.1999); *United States v. Saavedra,* 148 F.3d 1311 (11th Cir.1998); *United States v. Chandler,* 125 F.3d 892 (5th Cir. 1997); *United States v. Locklear,* 24 F.3d 641 (4th Cir.), *cert. denied,* 513 U.S. 978, 115 S.Ct. 457, 130 L.Ed.2d 365 (1994); while the Sixth and Eighth Circuits ("the minority") do. *See United States v. Benjamin,* 138 F.3d 1069 (6th Cir.1998); *United States v. Clay,* 117 F.3d 317 (6th Cir.), *cert. denied,* 522 U.S. 962, 118 S.Ct. 395, 139 L.Ed.2d 309 (1997); *United States v. Oppedahl,* 998 F.2d 584 (8th Cir.1993).

Subsumed within the question of which offense guideline section is applicable is a broader guideline dispute: at what point is "relevant conduct" factored in? Should relevant conduct be considered at the outset in determining the applicable offense guideline section or may it only be considered once that guideline section has been determined? Indeed, it is this broader dispute over the use of relevant conduct which has caused the majority and the minority to come to different conclusions. *See Crawford,* 185 F.3d at 1026 ("These circuits arrive at different results because they disagree about the role of 'relevant conduct' in selecting the applicable offense guideline section.").

We join the majority and conclude, based on our analysis of the Guidelines, that the applicable offense guideline section for a defendant who has not been convicted of 21 U.S.C. § 860 or stipulated to having committed a drug offense in or near a school zone is § 2D1.1. We also conclude that relevant conduct is factored in, if at all, only after the appropriate offense guideline section is selected.[6]

*The Framework*

While the Guidelines describe a nine-step process by which to arrive at a sentencing range, *see* § 1B1.1, only the first two steps are relevant here. According to § 1B1.1(a), the District Court first selects the offense guideline section applicable to the offense of conviction. *See* § 1B1.1(a). "Because it channels the remainder of the sentencing process, selection of the correct offense guideline section is critically important." *Saavedra,* 148 F.3d at 1314. The Guidelines instruct the Court to select

> the offense guideline section in Chapter Two (Offense Conduct) most applicable to the offense of conviction (*i.e.*, the offense conduct charged in the count of the indictment ... of which the defendant was convicted). *Provided,* however, in the case of a plea agreement ... containing a stipulation that specifically establishes a more serious offense than the offense of conviction, [the Court must] determine the offense guideline section in Chapter Two most applicable to the stipulated offense.

U.S.S.G. § 1B1.2(a)(emphasis in original); *see also* U.S.S.G. § 1B1.2, comment. (n.1). The Statutory Index points the Court to the applicable offense guideline section in Chapter Two.

Next, the Court determines the base offense level and applies any appropriate specific offense characteristics, cross

---

6. The circuit split will be resolved in favor of the majority view on November 1, 2000 when, unless modified or rejected by Congress, a proposed amendment to §§ 1B1.1, 1B1.2 and the Statutory Index's introductory commentary becomes effective. In its synopsis of the proposed amendment, the Sentencing Commission explained that

> [t]he clarification [of the inter-relationship among these provisions] is intended to emphasize that the sentencing court must apply the offense guideline referenced in the Statutory Index for the statute of conviction unless the case falls within the limited 'stip-

ulation' exception set forth in § 1B1.2(a). Therefore, in order for the enhanced penalties in § 2D1.2 to apply, the defendant must be convicted of an offense referenced to § 2D1.2, rather than simply have engaged in conduct described by that guideline. Furthermore, the amendment deletes Application Note 3 of § 1B1.2 (Applicable Guidelines), which provided that in many instances it would be appropriate for the court to consider the actual conduct of the offender, even if such conduct did not constitute an element of the offense.

references, and special instructions contained in the offense guideline section, as well as any other applicable sentencing factors pursuant to the definition of relevant conduct. *See* §§ 1B1.1(b), 1B1.3. Only at this point may the Court factor in relevant conduct. *See United States v. Lawton*, 193 F.3d 1087, 1094 (9th Cir. 1999); *Crawford*, 185 F.3d at 1028; *Saavedra*, 148 F.3d at 1316 ("[I]n relying on the concept of relevant conduct in order to justify applying § 2D1.2 to convictions under § 841(a)(1), [the 6th and 8th Circuits] ignore the fact that the concept of relevant conduct does not come into play *until* the correct offense guideline has been selected")(emphasis in original); *Chandler*, 125 F.3d at 897–98; *United States v. Goldfaden*, 959 F.2d 1324, 1329 (5th Cir.1992); *see also United States v. Knobloch*, 131 F.3d 366, 372 n. 4 (3d Cir.1997)("[A] sentencing court can look to relevant conduct only to answer the questions posed by the relevant guidelines."). If the Court deems conduct to be relevant in any of the enumerated ways,[7] the appropriate adjustments are made.

*The Framework Applied*

**Step One**

Based on this framework, the District Court in choosing the applicable offense guideline section was obligated to look at the crime of which Watterson was convict-

ed or at a more serious crime had she stipulated to such a crime.

■ It is undisputed that, despite the fact that the conspiracy to which Watterson pled guilty operated within 1000 feet of a school zone, Watterson was not charged with or convicted of conspiracy to distribute a controlled substance in or near a school zone, a violation of 21 U.S.C. § 860, but, rather, a 21 U.S.C. § 846 "conspiracy to distribute cocaine and marijuana," in violation of 21 U.S.C. § 841(a)(1). Section 860 is a substantive offense which requires proof of an element not included in § 841, as courts have "uniformly held," and not simply "an enhancement provision." *United States v. McQuilkin*, 78 F.3d 105, 109 (3d Cir.), *cert. denied*, 519 U.S. 826, 117 S.Ct. 89, 136 L.Ed.2d 45 (1996). We are not, therefore, free to disregard the government's charging decision, or Watterson's plea of guilty. Moreover, the Statutory Index specifically refers a violation of § 841(a) to § 2D1.1, while it refers a violation of § 860 to § 2D1.2. Concomitantly, § 2D1.1 includes § 841 but not § 860 as one of the statutory provisions to which it is applicable and § 2D1.2 includes § 860 but not § 841. Because a § 846 conspiracy to violate § 841(a)(1), and not § 860, is what was charged and pled to here, the appropriate offense guideline section was § 2D1.1.[8]

---

7. "Relevant conduct" is broadly defined to include:

[A]ll acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense; ... all harm that resulted from [those] acts and omissions ..., and all harm that was the object of such acts and omissions; and any

other information specified in the applicable guideline.
U.S.S.G. § 1B1.3(a).

8. In terms of selecting the offense guideline section, the Statutory Index lists § 2D1.2 as also applicable to violations of § 846 and, thus, the use of § 2D1.2 might seem appropriate. *See Crawford*, 185 F.3d at 1028–29 (§ 846 would permit use of § 2D1.2 if the school zone conduct was an object of the conspiracy). What is relevant in selecting the offense guideline section is not § 846, *per se*, but, rather, the underlying object of the conspiracy, which the government does not argue was the distribution of drugs in or near a school zone. *See* § 2X1.1(a) and comment. (n.2); *United States v. Takahashi*, 205 F.3d 1161, 1167 (9th Cir.2000)(holding, in case where object of § 846 conspiracy did not in-

The government argues, however, and the District Court apparently believed, that relevant conduct—which, here, at least arguably includes the school zone distributions—may be taken into account in choosing the applicable offense guideline section. To support this argument, it contends, as do the courts in the minority, that the Statutory Index is non-exhaustive and that an offense guideline section other than that or those listed for a particular statute may be more appropriate based on the surrounding facts. Simply put, to the minority, "the Index merely points the court in the right direction; its suggestions are advisory; what ultimately controls is the 'most applicable guideline.' " *Crawford*, 185 F.3d at 1026–27 n. 7 (citation omitted); *Clay*, 117 F.3d at 319 (citing commentary note 3 to § 1B1.1 which "clearly states that '[t]he list of 'Statutory Provisions' in the Commentary to each offense guideline does not necessarily include every statute covered by that guideline .' ").

■■ While we agree that the Statutory Index is not definitive but, rather, to be used for guidance, we are also convinced that it should only be disregarded in the " 'atypical case' in which the guideline specified in the Statutory Index is 'inappropriate.' " *Crawford*, 185 F.3d at 1026–27 n. 7. Deference should be paid to the Statutory Index where it points to an of-fense guideline section. *See Saavedra* 148 F.3d at 1315–16 ("[U]nder the doctrine of *expressio unius est exclusio alterius*, the express indication that an offense guideline section applies to several statutes of conviction 'strongly suggests' that it does not apply to a statute that is not listed") (citation omitted). As the Second Circuit stated:

> We do not understand [commentary note 3] to mean that whenever a defendant's total criminal conduct includes some acts that constitute an offense more serious than the offense of conviction, the guideline for the more serious offense may be used[.] Instead, we understand the exception described in Appendix A to cover those cases, probably few in number, where the conduct constituting the offense of conviction also constitutes another, more serious offense, thereby rendering the offense conduct not typical of the usual means of committing the offense of conviction.

*United States v. Elefant*, 999 F.2d 674, 677 (2d Cir.1993). We are not persuaded that this is an "atypical case" in which the Statutory Index's "strong suggestion" of § 2D1.1 can be cast away and § 2D1.2 applied instead. *See Saavedra*, 148 F.3d at 1315 (rejecting same argument and agreeing that a crime of this type does not present an "atypical case").[9] Rather, this

clude distributing drugs in or near a school zone, that § 2D1.1 rather than § 2D1.2 was the most applicable guideline section); *Crawford*, 185 F.3d at 1028–29 ("[The] court must necessarily consider the object of the conspiracy to determine which guideline is 'most applicable to the offense of conviction.' "); *see also Saavedra*, 148 F.3d at 1315 n. 4 ("The Statutory Index lists both § 2D1.2 and § 2D1.1, among several others, as applicable to convictions under 21 U.S.C. § 846. This does not support the contention of the United States that Saavedra can be sentenced under § 2D1.2 for a § 846 conspiracy to violate 21 U.S.C. § 841(a)(1). The captions to § 2D1.1 and § 2D1.2 indicate that they are intended to apply to both substantive violations of the statutory provisions on which they are based as well as to conspiracies to violate those provisions. Thus, the Statutory Index intends

§ 2D1.2 to apply only to § 846 conspiracies to violate 21 U.S.C. §§ 859, 860, or 861."); *Locklear*, 24 F.3d at 648 n. 4 ("We note that Appendix A lists section 2D1.2 as applicable to convictions under 21 U.S.C. § 846. We believe, however, that this is intended to refer only to convictions for conspiring to violate 21 U.S.C. § [§ ] 859, 860 or 861. Indeed, as noted in the text, the captions to section 2D1.1 and 2D1.2 clearly indicate that they are intended to apply both to substantive violations of the statutory provisions upon which they are premised and to conspiratorial and attempted violations thereof.").

9. Additionally, in order to apply § 2D1.2 to a § 841 offense, or a conspiracy to violate § 841, the courts in the minority look to "Application Note 3 to § 1B1.2 [which] states that in determining the applicable guideline,

is a garden variety drug distribution case to which § 2D1.1 applies.

The government also points us to commentary note 6 to § 1B1.3, which states that, "[u]nless ... an express direct[ion] [requiring conviction under a statutory provision] is included [in a particular guideline], conviction under the statute is not required." *Oppedahl*, 998 F.2d at 587 n. 4 (citing § 1B1.3, comment. (n.6)); *Clay*, 117 F.3d at 319 (same). Based on that statement, the government argues that the District Court was entitled to determine that the location of the distribution conspiracy within one or more school zones made § 2D1.2 more appropriate than § 2D1.1. Thus, the argument goes, without the Statutory Index as an obstacle, the District Court was free to select § 2D1.2, particularly here where paragraph twelve of the "Manner and Means" section of the indictment describes the proximity of the distribution activities to various schools. *Cf. Saavedra*, 148 F.3d at 1314 (finding the application of § 2D1.2 inappropriate and noting that the indictment did "not mention the proximity of [the elementary school] to the drug activity, and it [did] not even give the specific location of the drug activity from which such proximity could be learned or inferred.").

We find compelling, however, the Fourth Circuit's conclusion that commentary note 6 to § 1B1.3

> is intended only to apply where a reference to a particular statutory provision appears within *the actual body of a guideline*. To hold that the various guidelines of Chapter Two may apply regardless of whether the defendant has been convicted of the statutory provisions underlying those guidelines would

effectively turn the Chapter Two guidelines into a series of specific offense characteristics, a result we do not believe the Sentencing Commission to have contemplated. Indeed, the language quoted in the text from application note 2 to section 1B1.2 is inconsistent with this notion.

*Locklear*, 24 F.3d at 648–49 n. 5 (emphasis in original). "In other words, the defendant's 'relevant conduct' is actually irrelevant to determining the applicable offense guideline section." *Saavedra*, 148 F.3d at 1317.

For all of the above reasons, therefore, § 2D1.1 was the applicable offense guideline section here. We are not quite through, however. As noted above, had Watterson stipulated to committing a more serious offense, the offense guideline section selected could and should have reflected that offense. This Court has recently discussed the requisites of a stipulation pursuant to § 1B1.2(a). *See United States v. Nathan*, 188 F.3d 190 (3d Cir. 1999). We concluded that "where the parties drafted and agreed to a document that explicitly contained all of the relevant stipulations between them, it is clear that their 'deal' encompassed only those stipulations contained in that document." *Nathan*, 188 F.3d at 200–01. We made clear that issues emerging in factual basis colloquies are not stipulations. *See id.* at 193, 201; *see also United States v. Rutter*, 897 F.2d 1558 (10th Cir.)(" '[O]nce the Government agrees to a plea bargain without extracting such an admission [regarding a more serious offense], facts admitted by the defendant to shorten or obviate a sentencing hearing do not establish a 'stipulated offense' within the meaning of sec-

---

it is 'appropriate that the court consider the actual conduct of the offender, even when such conduct does not constitute an element of the offense.' " *Clay*, 117 F.3d at 319 (citing U.S.S.G. § 1B1.2 comment. (n.3)). The *Clay* court has, however, misapplied Application Note 3. It is very clear from § 1B1.2 that relevant conduct is not recognized until "after determining the appropriate offense guideline

section." § 1B1.2(b); *United States v. Cianci*, 154 F.3d 106, 111 (3d Cir.1998)(citing same provision with regard to *base offense level* determination). Commentary note 3, therefore, when read in context, obviously applies to § 1B1.2(b), and not § 1B1.2(a) and, thus, does not factor into "determining the applicable *guideline*." *Clay*, 117 F.3d at 319 (emphasis added).

tion 1B1.2(a).'")(citing *United States v. Guerrero*, 863 F.2d 245, 248 (2d Cir.1988)), *cert. denied*, 498 U.S. 829, 111 S.Ct. 88, 112 L.Ed.2d 60 (1990).

Watterson did not stipulate to distribution within a school zone; indeed, the stipulations in her plea agreement, which constituted the parties' entire agreement, did not even *mention* a school zone. Simply agreeing, when asked, with the location in which the conspiracy operated did not a stipulation make. *See, e.g., Crawford*, 185 F.3d at 1027 n. 8 (noting that plea agreement did not include stipulation to a more serious offense even though defendant was originally indicted for violating § 860); *Saavedra*, 148 F.3d at 1314 (finding that Saavedra "never made the sort of formal stipulation that would support sentencing him for a violation of § 860" despite conceding at sentencing that the activities took place within the requisite proximity to the school). For this reason as well, § 2D1.1, and not § 2D1.2, is the applicable offense guideline section. *See Crawford*, 185 F.3d at 1027 n. 8 (denying use of § 2D1.2 in case in which indictment charged violation of § 860 but defendant pleaded guilty to § 841 offense).

### *Step Two*

 It is at step two, where the Court determines the base offense level, when relevant conduct may be taken into account. Again, conduct is "relevant" if it relates to:

(1) calculating the base offense level, (2) considering the specific offense characteristics set forth in the particular guideline, (3) considering any cross-references contained in the particular guideline, and (4) making any adjustments authorized by Chapter Three.

*Chandler*, 125 F.3d at 897–98 (citing § 1B1.3(a)). As the Fifth Circuit noted in *Chandler*, the location of the distribution conspiracy does not fall within any of the four aforementioned areas in which relevant conduct is applied:

In this case, whether the offense occurred near a protected location is not relevant to any of these factors. First, although § 2D1.1 sets forth a number of base offense levels, the applicable base offense level is determined solely by the amount of controlled substances involved, and not by location of the offense. Second, although § 2D1.1 sets forth four specific offense characteristics (e .g., whether a dangerous weapon was possessed during the commission of the offense), not one of these characteristics includes whether the offense occurred near a protected location as defined by 21 U.S.C. § 860. Third, although § 2D1.1 contains a cross reference to § 2A1.1, § 2D1.1 does not contain a cross-reference to § 2D1.2. Finally, although Chapter Three authorizes a number of adjustments to the overall offense level (e.g., adjustments based on the role of the defendant in the offense or the vulnerability of the victim), Chapter Three does not authorize an adjustment if the offense occurred near a protected location.

125 F.3d at 898 (citation omitted). We could not say it better ourselves. We conclude, therefore, that even had the District Court believed it appropriate to consider Watterson's school zone activities at step two rather than in determining the offense guideline section at step one, those activities were simply not "relevant conduct" under §. 2D1.1.

### III

Because the District Court erred in determining that § 2D1.2 was the applicable offense guideline section and because Watterson's drug activities in or near a school zone were not relevant conduct under § 2D1.1, we will vacate Watterson's sentence and remand for resentencing in accordance with this opinion.