

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-10-2000

# United States v. Watterson

Precedential or Non-Precedential:

Docket 98-1596

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"United States v. Watterson" (2000). *2000 Decisions*. Paper 144.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/144

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 10, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-1596

TOSHIA WATTERSON, a/k/a TASHA

Toshia Watterson,
        Appellant

v.

UNITED STATES OF AMERICA

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
Cr. No.: 97-539-05
District Judge: The Honorable Harvey Bartle, III

Submitted Under Third Circuit LAR 34.1(a)
March 2, 2000

Before: ROTH, BARRY and STAPLETON, Circuit Judges

(Opinion Filed: July 10, 2000)

        Clayton A. Sweeney, Jr., Esquire
         Argued
        Suite 815 1528 Walnut Street
        Philadelphia, PA, 19102

        Roger Schrading, Esquire
        Krasner & Restrepo
        211 North 13th Street
        Suite 500
        Philadelphia, PA 19107

         Attorney for Appellant

J. Alvin Stout, III
 Assistant United States Attorney
Office of the United States Attorney
Suite 1250
615 Chestnut Street
Philadelphia, PA 19106

 Attorney for Appellee

OPINION OF THE COURT

BARRY, Circuit Judge:

This appeal primarily requires us to decide whether the District Court erred in sentencing Toshia Watterson as if she had been convicted of, or had stipulated to, distributing a controlled substance within 1000 feet of a school zone, when she had not. We find that the District Court erred in so doing and, accordingly, will vacate the sentence and remand for resentencing.

I

Beginning in 1995, Toshia Watterson ("Watterson") was involved with the "Massey Organization," a sophisticated drug trafficking ring in and around Philadelphia, Pennsylvania. Led by Derrick Massey, with Delbert Massey acting as his brother's right-hand man, the Massey Organization distributed drugs within 1000 feet of various public and parochial schools, among other locations. More specifically, the Organization obtained bulk quantities of marijuana and cocaine, broke them down into lesser quantities, and distributed the drugs primarily through three local bars -- the Hideaway Lounge, the 20 Plus Club and the Commodore Lounge -- all of which were located near those schools. Watterson, the girlfriend of Derrick Massey, at various times worked at all three of the aforementioned bars, and participated in the drug trafficking operation.

On September 30, 1997, a thirty-one count indictment was returned against Watterson and nine others, including

2

the Massey brothers, based on their involvement in and with the Massey Organization. Specifically, Watterson was charged with conspiracy to distribute cocaine and marijuana, in violation of 21 U.S.C. S 846 (Count One); possession of cocaine with intent to distribute, in violation of 21 U.S.C. S 841(a)(1) (Count Eighteen); possession of marijuana with intent to distribute, in violation of 21 U.S.C. S 841(a)(1) (Count Nineteen); and criminal forfeiture, pursuant to 21 U.S.C. S 853 (Count Twenty-Six). She was not charged with violating or conspiring to violate 21 U.S.C. S 860, which prohibits drug distribution "in or near" schools.1

On April 3, 1998, Watterson pled guilty to conspiracy to distribute cocaine and marijuana (Count One) and forfeiture (Count Twenty-Six). The other charges against her were subsequently dismissed.

On June 26, 1998, Watterson was sentenced to fifteen months in prison.2 At sentencing, Watterson challenged the computation of what was to become her guideline imprisonment range, specifically the use of offense guideline S 2D1.2 of the United States Sentencing Guidelines,3 which, as relevant here, deals with drug

_____

1. 21 U.S.C. S 860, in its current form, states, as relevant here:

     Distribution or manufacturing in or near schools and colleges

     Any person who violates section 841(a)(1) . . . by distributing, possessing with intent to distribute, or manufacturing a controlled substance in or on, or within one thousand feet of, the real property
     comprising a public or private elementary, vocational, or secondary school or a public or private college, junior college, or university, or
     a playground, or housing facility owned by a public housing authority, or within 100 feet of a public or private youth center, public swimming pool, or video arcade facility, is (except as provided
     in subsection (b) of this section) subject to (1) twice the maximum punishment authorized by section 841(b) of this title; and (2) at least twice any term of supervised release authorized by section 841(b) of this title for a first offense[.]

2. Based on a total offense level of fourteen and a criminal history category of I, Watterson's guideline imprisonment range was fifteen to twenty-one months.

3. See United States Sentencing Commission, Guidelines Manual ("U.S.S.G.") (Nov. 1997).

offenses committed near "protected locations" such as schools and which, if applied, would result in a base offense level two levels higher than that called for under S 2D1.1.4 Watterson argued that S 2D1.2 was inapplicable because Appendix A (the "Statutory Index") of the Guidelines compels the use of S 2D1.1 rather than S 2D1.2 as the guideline by which to set the base offense level when, as here, there was a 21 U.S.C. S 846 conspiracy to violate only 21 U.S.C. S 841(a)(1) and not 21 U.S.C. S 860. The District Court concluded, as had the Presentence Investigation Report, that S 2D1.2 was "applicable" but did not explain why it reached that conclusion. Presumably, it believed, as some other courts believe, that it was entitled to consider all relevant conduct in determining which offense guideline section should be selected in thefirst instance, and because the drug conspiracy operated in a school zone, S 2D1.2, the section listed in the Statutory Index as applicable to such violations, was most appropriate. The government agreed. We disagree.

II

The District Court had jurisdiction pursuant to 18 U.S.C. S 3231. We have jurisdiction under 18 U.S.C.S 3742(a) and (e), and 28 U.S.C. S 1291. We review the District Court's legal construction of the Sentencing Guidelines de novo. United States v. Johnson, 199 F.3d 123, 125 (3d Cir. 1999).
_____

4. S 2D1.2. Drug Offenses Occurring Near Protected Locations or Involving Underage or Pregnant Individuals; Attempt or Conspiracy

   (a) Base Offense Level (Apply the greatest):

   (1) 2 plus the offense level from S 2D1.1 applicable to the quantity
        of controlled substances directly involving a protected location or
        an underage or pregnant individual; or

   (2) 1 plus the offense level from S 2D1.1 applicable to the total
        quantity of controlled substances involved in the offense; or

   (3) 26, if the offense involved a person less than eighteen years of
        age; or

   (4) 13, otherwise.

4

The issue presented, i.e. whether S 2D1.2, rather than S 2D1.1,[5] is the applicable offense guideline section for a defendant who has not stipulated or pled guilty to, or been convicted at trial of, a violation of S 860 has caused a circuit split. In sum, the Fourth, Fifth, Ninth and Eleventh Circuits ("the majority") do not permit the use of S 2D1.2 in such a case, see United States v. Crawford, 185 F.3d 1024 (9th Cir. 1999); United States v. Saavedra, 148 F.3d 1311 (11th Cir. 1998); United States v. Chandler, 125 F.3d 892 (5th Cir. 1997); United States v. Locklear, 24 F.3d 641 (4th Cir.), cert. denied, 513 U.S. 978 (1994); while the Sixth and Eighth Circuits ("the minority") do. See United States v. Benjamin, 138 F.3d 1069 (6th Cir. 1998); United States v. Clay, 117 F.3d 317 (6th Cir.), cert. denied , 522 U.S. 962 (1997); United States v. Oppedahl, 998 F.2d 584 (8th Cir. 1993).

Subsumed within the question of which offense guideline section is applicable is a broader guideline dispute: at what point is "relevant conduct" factored in? Should relevant conduct be considered at the outset in determining the applicable offense guideline section or may it only be considered once that guideline section has been determined? Indeed, it is this broader dispute over the use of relevant conduct which has caused the majority and the

_____

5. S 2D1.1. Unlawful Manufacturing, Importing, Exporting, or Trafficking
        (Including Possession with Intent to Commit These Offenses);
Attempt
        or Conspiracy

        (a) Base Offense Level (Apply the greatest):

        (1) 43, if the defendant is convicted under 21 U.S.C. S 841(b)(1)(A),
        (b)(1)(B), or (b)(1)(C), or 21 U.S.C. S 960(b)(1), (b)(2), or (b)(3), and
        the offense of conviction establishes that death or serious bodily
        injury resulted from the use of the substance and that the
        defendant committed the offense after one or more prior
        convictions for a similar offense; or

        (2) 38, if the defendant is convicted under 21 U.S.C. S 841(b)(1)(A),
        (b)(1)(B), or (b)(1)(C), or 21 U.S.C. S 960(b)(1), (b)(2), or (b)(3), and
        the offense of conviction establishes that death or serious bodily
        injury resulted from the use of the substance; or

        (3) the offense level specified in the Drug Quantity Table set forth

in subsection (c) below.

minority to come to different conclusions. See Crawford, 185 F.3d at 1026 ("These circuits arrive at different results because they disagree about the role of `relevant conduct' in selecting the applicable offense guideline section.").

We join the majority and conclude, based on our analysis of the Guidelines, that the applicable offense guideline section for a defendant who has not been convicted of 21 U.S.C. S 860 or stipulated to having committed a drug offense in or near a school zone is S 2D1.1. We also conclude that relevant conduct is factored in, if at all, only after the appropriate offense guideline section is selected.6

The Framework

While the Guidelines describe a nine-step process by which to arrive at a sentencing range, seeS 1B1.1, only the first two steps are relevant here. According toS 1B1.1(a), the District Court first selects the offense guideline section applicable to the offense of conviction. SeeS 1B1.1(a). "Because it channels the remainder of the sentencing process, selection of the correct offense guideline section is critically important." Saavedra, 148 F.3d at 1314. The Guidelines instruct the Court to select

_____

6. The circuit split will be resolved in favor of the majority view on November 1, 2000 when, unless modified or rejected by Congress, a proposed amendment to SS 1B1.1, 1B1.2 and the Statutory Index's introductory commentary becomes effective. In its synopsis of the proposed amendment, the Sentencing Commission explained that

        [t]he clarification [of the inter-relationship among these provisions]
        is intended to emphasize that the sentencing court must apply the
        offense guideline referenced in the Statutory Index for the statute
of
        conviction unless the case falls within the limited`stipulation'
        exception set forth in S 1B1.2(a). Therefore, in order for the
        enhanced penalties in S 2D1.2 to apply, the defendant must be
        convicted of an offense referenced to S 2D1.2, rather than simply
        have engaged in conduct described by that guideline. Furthermore,
        the amendment deletes Application Note 3 of S 1B1.2 (Applicable
        Guidelines), which provided that in many instances it would be
        appropriate for the court to consider the actual conduct of the
        offender, even if such conduct did not constitute an element of the
        offense.

6

the offense guideline section in Chapter Two (Offense
Conduct) most applicable to the offense of conviction
(i.e., the offense conduct charged in the count of the
indictment . . . of which the defendant was convicted).
Provided, however, in the case of a plea agreement
. . . containing a stipulation that specifically
establishes a more serious offense than the offense of
conviction, [the Court must] determine the offense
guideline section in Chapter Two most applicable to the
stipulated offense.

U.S.S.G. S 1B1.2(a)(emphasis in original); see also U.S.S.G.
S 1B1.2, comment. (n.1). The Statutory Index points the
Court to the applicable offense guideline section in Chapter
Two.

Next, the Court determines the base offense level and
applies any appropriate specific offense characteristics,
cross references, and special instructions contained in the
offense guideline section, as well as any other applicable
sentencing factors pursuant to the definition of relevant
conduct. See SS 1B1.1(b), 1B1.3. Only at this point may the
Court factor in relevant conduct. See United States v.
Lawton, 193 F.3d 1087, 1094 (9th Cir. 1999); Crawford,
185 F.3d at 1028; Saavedra, 148 F.3d at 1316 ("[I]n relying
on the concept of relevant conduct in order to justify
applying S 2D1.2 to convictions under S 841(a)(1), [the 6th
and 8th Circuits] ignore the fact that the concept of
relevant conduct does not come into play until  the correct
offense guideline has been selected")(emphasis in original);
Chandler, 125 F.3d at 897-98; United States v. Goldfaden,
959 F.2d 1324, 1329 (5th Cir. 1992); see also United States
v. Knobloch, 131 F.3d 366, 372 n.4 (3d Cir. 1997)("[A]
sentencing court can look to relevant conduct only to
answer the questions posed by the relevant guidelines."). If
the Court deems conduct to be relevant in any of the
enumerated ways,7 the appropriate adjustments are made.

_____

7. "Relevant conduct" is broadly defined to include:

        [A]ll acts and omissions committed, aided, abetted, counseled,
        commanded, induced, procured, or willfully caused by the
        defendant; and in the case of a jointly undertaken criminal
activity

The Framework Applied

Step One

Based on this framework, the District Court in choosing the applicable offense guideline section was obligated to

look at the crime of which Watterson was convicted or at a more serious crime had she stipulated to such a crime.

It is undisputed that, despite the fact that the conspiracy to which Watterson pled guilty operated within 1000 feet of a school zone, Watterson was not charged with or convicted

of conspiracy to distribute a controlled substance in or near a school zone, a violation of 21 U.S.C. S 860, but, rather, a 21 U.S.C. S 846 "conspiracy to distribute cocaine and

marijuana," in violation of 21 U.S.C. S 841(a)(1). Section 860 is a substantive offense which requires proof of an element not included in S 841, as courts have"uniformly

held," and not simply "an enhancement provision." United States v. McQuilkin, 78 F.3d 105, 109 (3d Cir.), cert. denied, 519 U.S. 826 (1996). We are not, therefore, free to disregard the government's charging decision, or Watterson's plea of

guilty. Moreover, the Statutory Index specifically refers a violation of S 841(a) to S 2D1.1, while it refers a violation of S 860 to S 2D1.2. Concomitantly, S 2D1.1 includes S 841 but not S 860 as one of the statutory provisions to which it is applicable and S 2D1.2 includes S 860 but not S 841.

Because a S 846 conspiracy to violate S 841(a)(1), and not
_____

        (a criminal plan, scheme, endeavor, or enterprise undertaken by the
        defendant in concert with others, whether or not charged as a
        conspiracy), all reasonably foreseeable acts and omissions of
others
        in furtherance of the jointly undertaken criminal activity, that
        occurred during the commission of the offense of conviction, in
        preparation for that offense, or in the course of attempting to
avoid
        detection or responsibility for that offense; . . . all harm that
        resulted from [those] acts and omissions . . ., and all harm that
was
        the object of such acts and omissions; and any other information
        specified in the applicable guideline.

U.S.S.G. S 1B1.3(a).

S 860, is what was charged and pled to here, the appropriate offense guideline section was S 2D1.1.8

The government argues, however, and the District Court apparently believed, that relevant conduct -- which, here, at least arguably includes the school zone distributions -- may be taken into account in choosing the applicable offense guideline section. To support this argument, it contends, as do the courts in the minority, that the Statutory Index is non-exhaustive and that an offense guideline section other than that or those listed for a particular statute may be more appropriate based on the

_____

8. In terms of selecting the offense guideline section, the Statutory Index lists S 2D1.2 as also applicable to violations of S 846 and, thus, the use of S 2D1.2 might seem appropriate. See Crawford, 185 F.3d at 1028-29 (S 846 would permit use of S 2D1.2 if the school zone conduct was an object of the conspiracy). What is relevant in selecting the offense guideline section is not S 846, per se, but, rather, the underlying object of the conspiracy, which the government does not argue was the distribution of drugs in or near a school zone. See S 2X1.1(a) and comment. (n.2); United States v. Takahashi, 205 F.3d 1161, 1167 (9th Cir. 2000)(holding, in case where object of S 846 conspiracy did not include distributing drugs in or near a school zone, that S 2D1.1 rather than S 2D1.2 was the most applicable guideline section); Crawford, 185 F.3d at 1028-29 ("[The] court must necessarily consider the object of the conspiracy to determine which guideline is `most applicable to the offense of conviction.'"); see also Saavedra , 148 F.3d at 1315 n.4 ("The Statutory Index lists both S 2D1.2 and S 2D1.1, among several others, as applicable to convictions under 21 U.S.C. S 846. This does not support the contention of the United States that Saavedra can be sentenced under S 2D1.2 for a S 846 conspiracy to violate 21 U.S.C. S 841(a)(1). The captions to S 2D1.1 and S 2D1.2 indicate that they are intended to apply to both substantive violations of the statutory provisions on which they are based as well as to conspiracies to violate those provisions. Thus, the Statutory Index intends S 2D1.2 to apply only to S 846 conspiracies to violate 21 U.S.C. SS 859, 860, or 861."); Locklear, 24 F.3d at 648 n.4 ("We note that Appendix A lists section 2D1.2 as applicable to convictions under 21 U.S.C. S 846. We believe, however, that this is intended to refer only to convictions for conspiring to violate 21 U.S.C. S[S ] 859, 860 or 861. Indeed, as noted in the text, the captions to section 2D1.1 and 2D1.2 clearly indicate that they are intended to apply both to substantive violations of the statutory provisions upon which they are premised and to conspiratorial and attempted violations thereof.").

9

surrounding facts. Simply put, to the minority,"the Index merely points the court in the right direction; its suggestions are advisory; what ultimately controls is the `most applicable guideline.' " Crawford , 185 F.3d at 1026-27 n.7 (citation omitted); Clay, 117 F.3d at 319 (citing commentary note 3 to S 1B1.1 which "clearly states that `[t]he list of `Statutory Provisions' in the Commentary to each offense guideline does not necessarily include every statute covered by that guideline.' ").

While we agree that the Statutory Index is not definitive but, rather, to be used for guidance, we are also convinced that it should only be disregarded in the " `atypical case' in which the guideline specified in the Statutory Index is `inappropriate.' " Crawford, 185 F.3d at 1026-27 n.7. Deference should be paid to the Statutory Index where it points to an offense guideline section. See Saavedra 148 F.3d at 1315-16 ("[U]nder the doctrine of expressio unius est exclusio alterius, the express indication that an offense guideline section applies to several statutes of conviction `strongly suggests' that it does not apply to a statute that is not listed")(citation omitted). As the Second Circuit stated:

> We do not understand [commentary note 3] to mean that whenever a defendant's total criminal conduct includes some acts that constitute an offense more serious than the offense of conviction, the guideline for the more serious offense may be used[.] Instead, we understand the exception described in Appendix A to cover those cases, probably few in number, where the conduct constituting the offense of conviction also constitutes another, more serious offense, thereby rendering the offense conduct not typical of the usual means of committing the offense of conviction.

United States v. Elefant, 999 F.2d 674, 677 (2d Cir. 1993). We are not persuaded that this is an "atypical case" in which the Statutory Index's "strong suggestion" of S 2D1.1 can be cast away and S 2D1.2 applied instead. See Saavedra, 148 F.3d at 1315 (rejecting same argument and agreeing that a crime of this type does not present an "atypical case").9 Rather, this is a garden variety drug distribution case to which S 2D1.1 applies.

---

9. Additionally, in order to apply S 2D1.2 to a S 841 offense, or a conspiracy to violate S 841, the courts in the minority look to

10

The government also points us to commentary note 6 to
S 1B1.3, which states that, "[u]nless .. . an express
direct[ion] [requiring conviction under a statutory provision]
is included [in a particular guideline], conviction under the
statute is not required." Oppedahl, 998 F.2d at 587 n.4
(citing S 1B1.3, comment. (n.6)); Clay, 117 F.3d at 319
(same). Based on that statement, the government argues
that the District Court was entitled to determine that the
location of the distribution conspiracy within one or more
school zones made S 2D1.2 more appropriate than S 2D1.1.
Thus, the argument goes, without the Statutory Index as an
obstacle, the District Court was free to selectS 2D1.2,
particularly here where paragraph twelve of the"Manner
and Means" section of the indictment describes the
proximity of the distribution activities to various schools.
Cf. Saavedra, 148 F.3d at 1314 (finding the application of
S 2D1.2 inappropriate and noting that the indictment did
"not mention the proximity of [the elementary school] to the
drug activity, and it [did] not even give the specific location
of the drug activity from which such proximity could be
learned or inferred.").

We find compelling, however, the Fourth Circuit's
conclusion that commentary note 6 to S 1B1.3

> is intended only to apply where a reference to a
> particular statutory provision appears within the actual
> body of a guideline. To hold that the various guidelines
> of Chapter Two may apply regardless of whether the

_____

"Application Note 3 to S 1B1.2 [which] states that in determining the
applicable guideline, it is `appropriate that the court consider the
actual
conduct of the offender, even when such conduct does not constitute an
element of the offense.' " Clay, 117 F.3d at 319 (citing U.S.S.G. S 1B1.2
comment. (n.3)). The Clay court has, however, misapplied Application
Note 3. It is very clear from S 1B1.2 that relevant conduct is not
recognized until "after determining the appropriate offense guideline
section." S 1B1.2(b); United States v. Cianci, 154 F.3d 106, 111 (3d Cir.
1998)(citing same provision with regard to base offense level
determination). Commentary note 3, therefore, when read in context,
obviously applies to S 1B1.2(b), and not S 1B1.2(a) and, thus, does not
factor into "determining the applicable guideline." Clay, 117 F.3d at 319
(emphasis added).

11

> defendant has been convicted of the statutory provisions underlying those guidelines would effectively turn the Chapter Two guidelines into a series of specific offense characteristics, a result we do not believe the Sentencing Commission to have contemplated. Indeed, the language quoted in the text from application note 2 to section 1B1.2 is inconsistent with this notion.

Locklear, 24 F.3d at 648-49 n.5 (emphasis in original). "In other words, the defendant's `relevant conduct' is actually irrelevant to determining the applicable offense guideline section." Saavedra, 148 F.3d at 1317.

For all of the above reasons, therefore, S 2D1.1 was the applicable offense guideline section here. We are not quite through, however. As noted above, had Watterson stipulated to committing a more serious offense, the offense guideline section selected could and should have reflected that offense. This Court has recently discussed the requisites of a stipulation pursuant to S 1B1.2(a). See United States v. Nathan, 188 F.3d 190 (3d Cir. 1999). We concluded that "where the parties drafted and agreed to a document that explicitly contained all of the relevant stipulations between them, it is clear that their`deal' encompassed only those stipulations contained in that document." Nathan, 188 F.3d at 200-01. We made clear that issues emerging in factual basis colloquies are not stipulations. See id. at 193, 201; see also United States v. Rutter, 897 F.2d 1558 (10th Cir.)(" `[O]nce the Government agrees to a plea bargain without extracting such an admission [regarding a more serious offense], facts admitted by the defendant to shorten or obviate a sentencing hearing do not establish a `stipulated offense' within the meaning of section 1B1.2(a).' ")(citing United States v. Guerrero, 863 F.2d 245, 248 (2d Cir. 1988)), cert. denied, 498 U.S. 829 (1990).

Watterson did not stipulate to distribution within a school zone; indeed, the stipulations in her plea agreement, which constituted the parties' entire agreement, did not even mention a school zone. Simply agreeing, when asked, with the location in which the conspiracy operated did not a stipulation make. See, e.g., Crawford, 185 F.3d at 1027

12

n.8 (noting that plea agreement did not include stipulation to a more serious offense even though defendant was originally indicted for violating S 860); Saavedra, 148 F.3d at 1314 (finding that Saavedra "never made the sort of formal stipulation that would support sentencing him for a violation of S 860" despite conceding at sentencing that the activities took place within the requisite proximity to the school). For this reason as well, S 2D1.1, and not S 2D1.2, is the applicable offense guideline section. See Crawford, 185 F.3d at 1027 n.8 (denying use of S 2D1.2 in case in which indictment charged violation of S 860 but defendant pleaded guilty to S 841 offense).

Step Two

It is at step two, where the Court determines the base offense level, when relevant conduct may be taken into account. Again, conduct is "relevant" if it relates to:

>     (1) calculating the base offense level, (2) considering the specific offense characteristics set forth in the particular guideline, (3) considering any cross-references contained in the particular guideline, and (4) making any adjustments authorized by Chapter Three.

Chandler, 125 F.3d 897-98 (citing S 1B1.3(a)). As the Fifth Circuit noted in Chandler, the location of t