UNITED STATES of America, Plaintiff–Appellee,

v.

Mitchell LOCKLEAR, Defendant–Appellant.

UNITED STATES of America, Plaintiff–Appellee,

v.

Lee Allen LOWRY, Defendant–Appellant.

Nos. 93–5266, 93–5267.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 9, 1994.

Decided May 24, 1994.

**ARGUED:** Mary Elizabeth Manton, Federal Public Defender, Raleigh, NC, for appellant Lowry; Robert Lonnie Cooper, Fayetteville, NC, for appellant Locklear. Christine Witcover Dean, Asst. U.S. Atty., Raleigh, NC, for appellee. **ON BRIEF:** James R. Dedrick, U.S. Atty., Raleigh, NC, for appellee.

Before ERVIN, Chief Judge, and RUSSELL and HALL, Circuit Judges.

Affirmed in part and vacated and remanded in part by published opinion. Judge DONALD RUSSELL wrote the opinion, in which Chief Judge ERVIN and Judge K.K. HALL joined.

## OPINION

DONALD RUSSELL, Circuit Judge:

Mitchell Locklear and Lee Allen Lowry appeal their convictions on drug-related charges. We remand Mitchell Locklear's case for resentencing in light of the district court's erroneous use of U.S.S.G. § 2D1.2 as a specific offense characteristic to increase Mitchell Locklear's base offense level. We otherwise affirm appellants' convictions in all respects.

I.

A.

Appellants Mitchell Locklear ("M. Locklear") and Lee Allen Lowry ("Lowry") were

charged, along with Michael Jacobs ("Jacobs") and Ronald Dean Locklear ("R. Locklear"), in an eight-count indictment. The portions of the indictment relevant to our analysis alleged the following. Count one charged all defendants with conspiracy both to possess with intent to distribute, and to distribute, cocaine and marihuana, in violation of 21 U.S.C. §§ 841(a)(1), 846. Included under the heading "MANNER AND MEANS TO EFFECT THE OBJECTS OF THE CONSPIRACY" is the allegation that M. Locklear used persons under the age of 18 in furtherance of the conspiracy in violation of 21 U.S.C. § 861.

Count three charged M. Locklear and Jacobs with the use of a firearm, on or about January 30, 1992, in furtherance of the conspiracy, in violation of 21 U.S.C. § 924(c).

Count six charged that, on or about November 26, 1991, Lowry and R. Locklear had knowingly distributed cocaine and aided and abetted one another in doing so, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Count seven charged that Lowry and R. Locklear also violated 18 U.S.C. § 924(c) on that same date by using a firearm while committing the crime charged in count six.

R. Locklear entered a guilty plea. M. Locklear pled guilty to one of the counts; he and the other two remaining indictees proceeded to trial on all remaining counts.

### B.

The evidence presented at trial, taken in the light most favorable to the government, and as pertinent here, is summarized as follows. In March 1991, in response to complaints from neighbors, the North Carolina State Bureau of Investigation ("SBI") undertook to monitor illegal activity conducted in a small rural North Carolina neighborhood. SBI Special Agent Randy Myers and Federal Bureau of Alcohol, Tobacco and Firearms ("ATF") Special Agent Paul Cross established a surveillance post in the home of Jeanette Chavis ("Chavis"). Chavis' house is located near the homes of M. Locklear and Jacobs.

Surveillance, using still and video cameras, was conducted between January 1992 and March 1992. The agents observed numerous vehicles pull into the Locklear's yard. One occupant would exit and speak to Jacobs, M. Locklear, or R. Locklear, a younger brother of M. Locklear. On different occasions, the agents saw Jacobs or M. Locklear go to a shed located behind Jacobs' parents' house and return and conduct a transaction. They saw money and packages exchange hands. They observed drugs stashed in a dog pen by the Locklear house. Neighbors also testified that they had observed, over an extended period, numerous narcotics transactions involving Jacobs, R. Locklear and M. Locklear.

Carlos Canady ("Canady") testified that he had been a regular drug customer of M. Locklear. Canady testified that he usually went to M. Locklear's house to get drugs, going to the back bedroom where M. Locklear stayed, but that if he arrived unannounced, M. Locklear would send Jacobs or R. Locklear, then under age 18, to get the drugs. Canady also testified that Lowry had been present at the Locklear house on some occasions when Canady also was there. Canady did not indicate that he had seen Lowry engage in any narcotics transaction while there.

Chavis testified that she had seen Lowry at the Locklear residence a total of three times. A local officer also testified that he had seen Lowry and M. Locklear driving around together, and on one such occasion, stopped M. Locklear's car and seized a .25 automatic weapon from the vehicle.

Four surveillance video tapes of the Locklear residence and still photographs taken on various dates were submitted in evidence. In none of these videos and in no picture does Lowry appear. Lowry's father testified that Lowry worked with him out of town during the week.

Law enforcement agents and other witnesses also testified as to several specific episodes involving the defendants. First, during the surveillance, Agent Myers recognized R. Locklear as the person he had seen on November 26, 1991, when he and a confidential informant ("CI") had purchased two ounces of cocaine from Lowry. On that date, R. Locklear drove Lowry in M. Locklear's

car to a local Texaco station where the meeting was held. Agent Myers gave Lowry the money and Lowry and R. Locklear left to get the cocaine. The road upon which they returned was the road upon which they would have returned had they paid a visit to the Locklear residence. After Lowry gave Myers the cocaine, he asked the CI to get into the Locklear car. The CI complied with this request, whereupon Lowry took out an automatic weapon and threatened the CI. The CI was ultimately released, shaken but unharmed.

Michael Shane Oxendine ("Oxendine") testified that he had purchased drugs from M. Locklear and had not paid for the last batch because it turned out not to be good. He testified that, thereafter, M. Locklear threatened him on several occasions. The first time, a juvenile, at M. Locklear's direction, had displayed a firearm concealed under his coat to Oxendine.

Next, on January 30, 1992, surveillance agents saw Jacobs, M. Locklear, and James Belton Locklear get into Jacobs' car and drive off. Shortly thereafter, the agents learned that M. Locklear had been involved in an altercation with Oxendine at a local store. According to Oxendine, M. Locklear tried to pull Oxendine out of his car; M. Locklear then had Jacobs get a shotgun out of Jacobs' vehicle and then threatened to kill Oxendine if he didn't pay his debt.

Oxendine also testified that, on February 28, 1992, he went to the residence of Johnny Dial, one of the Locklears' associates, where he found Jacobs. Jacobs left and returned to the front of the Dial residence with M. Locklear, who had a weapon. M. Locklear hollered at Oxendine, urging him to come outside. Surveillance agents also observed and photographed M. Locklear with a rifle walking from his house threatening Oxendine while Oxendine was at the Dial residence.

Neighbors testified that they had observed M. Locklear go to a particular section of woods behind and across the road from their houses and then return to deal with customers. On April 16, 1992, Agents Myers and Cross entered the woods and discovered an ammunition can buried in the woods. Inside they found some 10 ounces of cocaine con-

tained in plastic bags. One of the bags had M. Locklear's fingerprints on it.

Finally, when the defendants were arrested, drug paraphernalia and weapons were found in the Locklear residence. A consent search of the Jacobs' residence revealed scales behind a shed where video tapes and photos showed Jacobs and M. Locklear going to obtain drugs.

## C.

A jury convicted M. Locklear, Lowry and Jacobs on all counts remaining against them. Lowry and M. Locklear appeal.

## II.

Appellant Lowry made a motion for an acquittal on the conspiracy count. *See* Fed.R.Crim.P. 29. Lowry appeals from the district court's denial of this motion. In reviewing the denial of a motion for acquittal, we must, considering the evidence and all reasonable inferences that can be drawn from it in the light most favorable to the government, determine whether any rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Sloley,* 19 F.3d 149, 151–52 (4th Cir. 1994).

> To sustain [a] conspiracy conviction, there need only be a showing that [the] defendant knew of the conspiracy's purpose and some action indicating his participation. These elements can be shown by circumstantial evidence such as his relationship with other members of the conspiracy, the length of this association, his attitude, conduct, and the nature of the conspiracy.

*United States v. Collazo,* 732 F.2d 1200, 1205 (4th Cir.1984) (citation omitted), *cert. denied,* 469 U.S. 1105, 105 S.Ct. 777, 83 L.Ed.2d 773 (1985). "[T]he evidence need only establish a slight connection between the defendant and the conspiracy to support conviction." *United States v. Brooks,* 957 F.2d 1138, 1147 (4th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 3051, 120 L.Ed.2d 917 (1992). However, the evidence must be "sufficient to support a determination by the jury that [the defen-

dant] participated in a drug conspiracy and [was] not [a] mere 'associate[ ].' " *Id.*

Lowry argues that his connection to the conspiracy was insufficiently established by the evidence. Circuit precedent dictates otherwise. Aside from the November 26, 1991, transaction, of which ample evidence was produced, the evidence relating to Lowry presented at trial was scant. However, the jury was justified, based upon the evidence of the November transaction, in finding Lowry to be a conspirator. In essence, the evidence indicates that, on November 26, 1991, Lowry sold drugs to an undercover agent. Lowry was driven to meet the agent and a confidential informant by R. Locklear, M. Locklear's brother, in M. Locklear's car. Further, R. Locklear drove Lowry to obtain the drugs to be delivered to the agent. The evidence indicates that, as the district court found on sentencing, M. Locklear was the organizer and leader of the charged conspiracy and R. Locklear was a conspirator. Thus, Lowry conducted a drug transaction with a conspirator, in the leader's car.

In *United States v. Baker*, 985 F.2d 1248 (4th Cir.1993), we were faced with a similar sufficiency of the evidence challenge raised by an appellant by the name of Blackwell. There, the existence of a conspiracy to distribute cocaine in the Rock Hill and Charlotte areas was "undisputed," as was the fact that an individual by the name of White was a conspirator. *Id.* at 1255. The evidence, taken in the light most favorable to the government, further indicated that Blackwell and White acted as partners in conducting a cocaine transaction in Winston–Salem. We indicated that this was a sufficient basis upon which to affirm the jury's conviction of Blackwell for involvement in the Rock Hill–Charlotte conspiracy. *Id.* We specifically rejected Blackwell's argument that there was insufficient evidence to indicate that the drug transaction in Winston–Salem was related to the conspiracy in Rock Hill and Charlotte. *Id.*

If anything, the evidence against Blackwell in *Baker* was weaker than the evidence against Lowry here. In *Baker*, the only connection between the transaction in Winston–Salem and the conspiracy in Rock Hill and Charlotte was the participation of White. Here, the November 26, 1991, transaction took place *in the same town* as the alleged conspiracy. Moreover, not only did R. Locklear, a participant in the conspiracy, play a role in the transaction, but R. Locklear and Lowry conducted the transaction with the use of the car belonging to the conspiracy's leader. We believe that *Baker* is controlling here and, consequently, reject Lowry's sufficiency argument.[1]

### III.

■ M. Locklear claims that the testimony of Special ATF Agent James Darnell Newman regarding Jacobs' postarrest statement violated his Sixth Amendment confrontation right. Newman, who arrested Jacobs, testified:

> [Jacobs] said that he knew that on occasion drugs had been kept under the storage shed behind his house and that he was familiar with the Locklear brothers and that he had known them all his life.

J.A. 1130. Although the statement makes reference to "the Locklear brothers," other, incriminating, references to M. Locklear were apparently redacted from the statement prior to its admission. Despite this redaction, Locklear claims to have suffered a violation of his confrontation right under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), by virtue of Newman's testimony.

In *Bruton*, the Supreme Court held that, where a nontestifying codefendant's confession implicates the defendant, a jury instruction is inadequate as a matter of law to protect the defendant's Confrontation Clause rights. Thus, *Bruton* holds that, under such circumstances, if the entire, unredacted statement of the codefendant is to be admitted into evidence, a severance is mandated.

---

1. In *Baker*, we expressly noted that the district court had instructed the jury that it could find that more than one conspiracy had been formed. 985 F.2d at 1255. Here, Lowry did not request such an instruction, nor was one given. We do not see, however, why a sufficiency of the evidence claim should in any way turn on the inclusion or exclusion of such an instruction.

*Bruton,* however, left open the question of whether redaction of the codefendant's statement, combined with a limiting instruction, might satisfy the Confrontation Clause and eliminate the need for a severance.

*Richardson v. Marsh,* 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), answered this question in the affirmative. In *Marsh,* the Court held that redaction of a codefendant's "confession ... to eliminate not only the defendant's name, but any references to his or her existence," 481 U.S. at 211, 107 S.Ct. at 1709, combined with a limiting instruction, satisfied the Sixth Amendment. M. Locklear argues that the Sixth Amendment requires, in all cases, nothing less than a full redaction of every reference to the defendant in any statement of a nontestifying codefendant.

We reject this argument. *Marsh* offers a method by which the *Bruton* requirement of a severance can be avoided. For the *Marsh* remedy to be applicable, then, there must be a *Bruton* problem. A *Bruton* problem exists only to the extent that the codefendant's statement in question, on its face, implicates the defendant. Prior to *Marsh,* we recognized: "When an out-of-court statement of a nontestifying codefendant is introduced, the written record of the statement is typically edited to remove *incriminatory* references pertaining to other defendants." *United States v. Crockett,* 813 F.2d 1310, 1314 (4th Cir.) (emphasis added), *cert. denied,* 484 U.S. 834, 108 S.Ct. 112, 98 L.Ed.2d 71 (1987); *see id.* The Supreme Court in *Marsh* confirmed this interpretation of *Bruton. See Marsh,* 481 U.S. at 208, 107 S.Ct. at 1707 ("In *Bruton,* the codefendant's confession 'expressly implicat[ed]' the defendant as his accomplice. *Id.* [391 U.S.] at 124, n. 1, 88 S.Ct., at 1621, n. 1. Thus, at the time that confession was introduced there was not the slightest doubt that it would prove 'powerfully incriminating.' *Id.,* at 135, 88 S.Ct., at 1627."); *id.,* at 209, 107 S.Ct. at 1708 (indicating that *Bruton* is limited to cases involving "facially incriminating confessions"). Not surprisingly, we have continued to follow this interpretation in

the wake of *Marsh. See, e.g., United States v. Campbell,* 935 F.2d 39, 43 (4th Cir.) (emphasis added) (citations omitted) ("*Bruton* stands for the proposition that an accused's Sixth Amendment right of confrontation is violated when a non-testifying co-defendant's statement *which inculpates the accused* is admitted into evidence at their joint trial. ... *The codefendant's statement is inculpatory if it could be fairly understood to incriminate the accused.*"), *cert. denied,* —— U.S. ——, 112 S.Ct. 348, 116 L.Ed.2d 287 (1991).

Here, Jacobs' statement hardly functions as a confession with respect to Jacobs himself. Even less can it be said to suggest that M. Locklear engaged in any crimes. In short, we do not believe that Jacobs' postarrest statement, as redacted, can fairly be understood to incriminate M. Locklear. *Cf. United States v. Briscoe,* 896 F.2d 1476, 1502 (7th Cir.), *cert. denied,* 498 U.S. 863, 111 S.Ct. 173, 112 L.Ed.2d 137 (1990). In any event, to the extent that it can, there is no reversible error. At most, Jacobs' statement indicates M. Locklear's awareness of the use of the shed on the Jacobs' property as a storehouse for narcotics. In light of other evidence in the case, then, Jacobs' statement is cumulative and, given the overwhelming evidence of M. Locklear's guilt, we conclude that any error is harmless.[2] *See United States v. Clarke,* 2 F.3d 81, 85 (4th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1194, 127 L.Ed.2d 544 (1994).

## IV.

■ Count three of the superseding indictment charged that M. Locklear violated 18 U.S.C. § 924(c) by carrying and using a weapon while collecting drug monies allegedly due him. Section 924(c), as relevant here, imposes a five year prison sentence for an individual who, "during and in relation to any ... drug trafficking crime ..., uses or carries a firearm...." 18 U.S.C. § 924(c)(1). "[T]he term 'drug trafficking crime' [includes] any felony punishable under the Controlled Substances Act (21 U.S.C. [§ ] 801 et

---

2. Because he did not request one, M. Locklear cannot now complain of the absence of a limiting instruction. We therefore need not address

whether a limiting instruction should appropriately have been supplied had one been requested.

seq.). . . ." *Id.* § 924(c)(2). M. Locklear notes that "[n]o where [sic] in Title 21 U.S.C. Sections 801 *et seq.* is it a crime to collect monies owed." Appellants' Br. 38. In particular, M. Locklear argues that the statutory definition of "distribute" does not appear to contemplate collection of payments due, *see* 21 U.S.C. § 802(11) ("The term 'distribute' means to deliver . . . a controlled substance or a listed chemical."); any distribution of cocaine, it is argued, is concluded upon delivery, *see id.* § 802(8) ("The terms 'deliver' or 'delivery' mean the actual, constructive or attempted transfer of a controlled substance or a listed chemical. . . .").

The indictment in this case identified collecting money due from sale of drugs as part of the conduct of the conspiracy. Conspiracy to distribute cocaine was therefore the "drug trafficking crime" in connection to which M. Locklear was alleged to have carried and used firearms. We have little trouble concluding that, even assuming collection of drug monies does not constitute part of drug "distribution", it does constitute part of a *conspiracy* to distribute drugs, *see United States v. Woods,* 995 F.2d 713, 718 (7th Cir. 1993) ("Carrying a gun to protect drugs or money constitutes 'use' under § 924(c)(1)."); *see also United States v. Markarian,* 967 F.2d 1098, 1104 (6th Cir.1992) ("It is clear that under general drug conspiracy law the two trips to collect drug money were acts in furtherance of the conspiracy."), *cert. denied,* —— U.S. ——, 113 S.Ct. 1344, 122 L.Ed.2d 726 (1993); *United States v. Arboleda,* 929 F.2d 858, 866 (1st Cir.1991) (collection of drug money is "admissible as direct evidence of . . . conspiracy").

## V.

■ At sentencing, the district court increased M. Locklear's offense level for use in the conspiracy of underage persons pursuant to U.S.S.G. § 2D1.2(a)(2). On this appeal, M. Locklear does not challenge the fact that he made use of underage persons as alleged; he argues only that, because the Commentary to section 2D1.2 lists, as the "Statutory Provi-

sions" upon which the guideline is grounded, 21 U.S.C. §§ 859, 860 and 861, section 2D1.2 applies to convictions only under those sections. Although the district court based its application of section 2D1.2 on section 861, M. Locklear notes that he was never convicted of violating either that section, or section 859 or section 860.

Although the evidence at trial indicated that M. Locklear made use of underage persons in the perpetration of the charged conspiracy, the jury was never asked to find, as a matter of fact, that this had occurred. At M. Locklear's sentencing hearing, the district court found, presumably by a preponderance of the evidence, that M. Locklear had used underage persons in the conduct of the conspiracy in violation of section 861. The district court acknowledged that M. Locklear had been neither charged with, nor convicted of, violation of that section, but concluded that, because the indictment gave notice to M. Locklear that his conduct had infringed section 861, enhancement of M. Locklear's sentence under U.S.S.G. § 2D1.2 was appropriate. The district court thus effectively treated section 2D1.2 as a specific offense characteristic to augment the base offense level assigned by section 2D1.1.[3]

The Eighth Circuit approved of similar action by a district court in *United States v. Oppedahl,* 998 F.2d 584 (8th Cir.1993). There, although the defendant was not convicted of violation of section 860, which provides for increased punishment where a drug-distribution offense occurs within 1,000 feet of school property, the district court nevertheless, in reliance upon section 2D1.2, increased the defendant's base offense level beyond the level assigned by section 2D1.1. The Eighth Circuit affirmed, holding that "the location of a drug-distribution offense is properly considered as relevant conduct under the Sentencing Guidelines," 998 F.2d at 586, and that "[s]ection 2D1.2 does not require a conviction under 21 U.S.C. § 860 in order to consider such drug activities as relevant conduct in calculating the defendant's base offense level," *id.* at 587 n. 4.

---

**3.** Because the issue presented is one involving the proper application of the Sentencing Guidelines, we review the district court's action *de*

*novo. United States v. Daughtrey,* 874 F.2d 213, 217 (4th Cir.1989).

■ While we do not doubt that the Sentencing Commission could, if it chose, enhance the sentence of a defendant convicted of a drug-related crime if commission of the crime was aided by the use of a juvenile by defining the use of a juvenile as a specific offense characteristic, *see United States v. Kimberlin*, 18 F.3d 1156, 1160 (4th Cir.1994) ("Courts are not limited to considering only those activities resulting in a criminal conviction when determining a defendant's sentence."), *cert. denied*, — U.S. —, 114 S.Ct. 1857, 128 L.Ed.2d 480 (1994), we must apply the Guidelines as they are written, *United States v. Williams*, 954 F.2d 204, 206 (4th Cir.1992). We believe that, as currently constituted, section 2D1.2 is intended not to identify a specific offense characteristic which would, where applicable, increase the offense level over the base level assigned by section 2D1.1, but rather to define the base offense level for violations of 21 U.S.C. §§ 859, 860 and 861.

Examination of the complete sentencing process envisioned by the Sentencing Guidelines is helpful to an understanding of the point at issue and, ultimately, supports the result we reach. U.S.S.G. § 1B1.2 directs the sentencing court to "[d]etermine the offense guideline section in Chapter Two (Offense Conduct) most applicable to the offense of conviction (*i.e.*, the offense conduct charged in the count of the indictment or information of which the defendant was convicted)." Application note 1 to section 1B1.2 further explains: "As a general rule, the court is to use the guideline section from Chapter Two most applicable to the offense

of conviction. The Statutory Index (Appendix A) provides a listing to assist in this determination."

Part D of Chapter Two is entitled, "Offenses Involving Drugs". We observe that the sections in Chapter Two list the "Statutory Provisions" to which they are applicable. Section 2D1.1 includes 21 U.S.C. § 841(a) in this regard; the caption to the guideline indicates the guideline also applies to conspiracy to violate that provision. As noted above, section 2D1.2 lists 21 U.S.C. §§ 859, 860 and 861 as the "Statutory Provisions" to which it is applicable; the caption indicates that this guideline as well is intended to apply to conspiracy to violate these provisions. Because M. Locklear was convicted of conspiracy to violate 21 U.S.C. § 841(a), we have little trouble concluding that the guideline provision under which M. Locklear should have been sentenced was indeed section 2D1.1.[4]

The district court and, based upon its reasoning in *Oppedahl*, the Eighth Circuit would not quarrel with this result. Presumably, however, the Eighth Circuit would, as did the court below, increase M. Locklear's offense level pursuant to section 2D1.2. We believe that such action is inconsistent with the plain language of the Guidelines. "Section 1B1.2(b) directs the court, once it has determined the applicable guideline (*i.e.*, the applicable guideline section from Chapter Two) under [section] 1B1.2(a) to determine any applicable offense characteristics (*under that guideline*)...." U.S.S.G. § 1B1.2, comment. (n.2) (emphasis added).[5] *Cf.* U.S.S.G.

---

**4.** That the indictment mentioned violation of section 861 as part of the conduct of the conspiracy is irrelevant: U.S.S.G. § 1B1.2 speaks to the "offense of conviction," and M. Locklear was convicted neither of violating, nor of conspiring to violate, section 861.

We note that Appendix A lists section 2D1.2 as applicable to convictions under 21 U.S.C. § 846. We believe, however, that this is intended to refer only to convictions for conspiring to violate 21 U.S.C. § 859, 860 or 861. Indeed, as noted in the text, the captions to section 2D1.1 and 2D1.2 clearly indicate that they are intended to apply both to substantive violations of the statutory provisions upon which they are premised and to conspiratorial and attempted violations thereof.

**5.** In concluding that conviction of violation of section 860 as one of the statutory provisions

underlying section 2D1.2 is not required, the Eighth Circuit in *Oppedahl*, 998 F.2d at 587 n. 4, relied upon the statement in application note 6 to U.S.S.G. § 1B1.3 that, "[u]nless ... an express directive [requiring conviction under a statutory provision] is included [in the guideline section for application of the base offense level or a specific offense characteristic], conviction under the statute is not required." We believe that this application note is intended only to apply where a reference to a particular statutory provision appears *within the actual body of a guideline*. To hold that the various guidelines of Chapter Two may apply regardless of whether the defendant has been convicted of the statutory provisions underlying those guidelines would effectively turn the Chapter Two guidelines into a series of specific offense characteristics, a result we do

§ 1B1.2 (directing the sentencing court to "[d]etermine *the* [singular] offense guideline section in Chapter Two ... most applicable to the offense of conviction") (emphasis added). Section 2D1.1, the offense guideline section applicable here, contains no cross-reference to section 2D1.2.[6] Indeed, as contemplated by application note 2 to section 1B1.2, section 2D1.1 contains its own specific offense characteristics in subsection (b). If the Sentencing Commission wished to include the use of an underage person as a specific offense characteristic warranting sentence enhancement, it could easily have done so in § 2D1.1(b). It did not.

Moreover, the Background to section 2D1.2 states: "This section implements the direction to the Commission in [s]ection 6454 of the Anti–Drug Abuse Act of 1988." That section directed

> the United States Sentencing Commission [to] promulgate guidelines, or [to] amend existing guidelines, to provide that a defendant *convicted* of violating [21 U.S.C. § 859, 860 or 861] involving a person under 18 years of age shall be assigned an offense level under chapter 2 of the sentencing guidelines that [meets certain specifications].

Anti–Drug Abuse Act of 1988, Pub.L. No. 100–690, tit. VI, § 6454(a), 102 Stat. 4181, 4372 (emphasis added). The Commission was not instructed to identify the use of an underage person as a specific offense characteristic with respect to other crimes, nor does section 2D1.2 indicate that the Commission opted, of its own accord, to do so. We therefore respectfully disagree with the result reached by the Eighth Circuit in *Oppedahl.*

For the reasons stated, M. Locklear's sentence must be vacated for resentencing solely to remedy the erroneous increase of his offense level, pursuant to section 2D1.2, for use of underage persons in committing a drug-related crime.

## VI.

We have examined appellants' remaining assignments of error and determined that none warrants relief.[7]

## CONCLUSION

We vacate M. Locklear's sentence and remand for resentencing solely to remedy the improper application of U.S.S.G. § 2D1.2 to increase his base offense level. In all other

---

not believe the Sentencing Commission to have contemplated. Indeed, the language quoted in the text from application note 2 to section 1B1.2 is inconsistent with this notion.

6. Section 2D1.2 makes mention of section 2D1.1, but not in a way such as to indicate that section 2D1.2 is ever intended to act as a specific offense enhancement provision where section 2D1.1 is otherwise applicable.

7. Lowry argues that he was prejudiced by the district court's jury charge on the conspiracy count. Taken as a whole, we believe that the district court's charge fairly states the controlling law; thus, there is no error. *United States v. Cobb,* 905 F.2d 784, 788–89 (4th Cir.1990), *cert. denied,* 498 U.S. 1049, 111 S.Ct. 758, 112 L.Ed.2d 778 (1991).

M. Locklear argues that a comment, volunteered by Special ATF Agent William F. Marshall, III, indicating that M. Locklear opted to exercise his right to remain silent upon arrest, violated his rights under *Doyle v. Ohio,* 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976). The government concedes that this was error, but urges that the error was harmless. Subjecting the record to the harmlessness analy-

sis enunciated in *Williams v. Zahradnick,* 632 F.2d 353 (4th Cir.1980), and in light of the fact that the singular comment was not intentionally elicited by the prosecution and the fact that the district judge ultimately struck the comment and instructed the jury to ignore the comment, we conclude that the error was indeed harmless.

M. Locklear and Lowry also argue that the district court made numerous erroneous evidentiary rulings. Upon review of the record, however, we are satisfied that the district court did not abuse its discretion. *See United States v. Russell,* 971 F.2d 1098, 1104 (4th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1013, 122 L.Ed.2d 161 (1993). M. Locklear suggests as well that a state court acquittal on a weapons possession charge should have precluded the district court from concluding, as it did, that the jury could consider the weapon underlying the state court case against M. Locklear. Our decision in *United States v. Ricks,* 882 F.2d 885, 889–90 (4th Cir.1989), *cert. denied,* 493 U.S. 1047, 110 S.Ct. 846, 107 L.Ed.2d 841 (1990), forecloses this argument. Finally, M. Locklear argues that the district court made numerous erroneous factual findings with regard to his sentencing. We cannot agree with M. Locklear's characterization of these findings as clearly erroneous.

respects, the judgments of the district court are affirmed.

*AFFIRMED IN PART AND VACATED AND REMANDED IN PART.*