### UNITED STATES of America

v.

### Robert S. JACKSON–BEY

No. CIV.A.03–68–A.
No. CRIM.92–75–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Feb. 11, 2004.

---

United States Attorney's Office, Alexandria, VA, for Plaintiff.

Robert S. Jackson–Bey, Minersville, PA, Pro se.

**MEMORANDUM OPINION**

ELLIS, District Judge.

The matter is before the Court on *pro se* defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Both defendant and the government have fully briefed the procedural issues raised in defendant's motion, and defendant's substantive § 2255 claims do not require a responsive pleading from the government. Accordingly, the matter is now ripe for disposition.[1]

**I.**

The facts of this case date back more than twelve years. Specifically, on September 12, 1991, defendant was charged in a criminal complaint with conspiracy to distribute crack cocaine, in violation of 21 U.S.C. § 846. He was arrested on the criminal complaint in New York City five months later, on February 20, 1992. On the same date, defendant, together with five co-conspirators, was charged in a 25–count Indictment with the following offenses: (i) conspiracy to manufacture and distribute crack cocaine, in violation of 21 U.S.C. § 846 (Count 1); (ii) receipt and interstate shipment of firearms, in violation of 18 U.S.C. § 922(a)(1)(A) (Count 2); (iii) carrying a firearm during a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Counts 3 through 6); (iv) possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Counts 7 through 10); (v) employment of a person under the age of 18 to distribute crack cocaine, in violation of 21 U.S.C. § 845b(a)(1)[2] (Counts 11 through 13); (vi) distribution of crack cocaine to a person under the age of 21, in

---

1. Oral argument is dispensed with because the facts and legal contentions are adequately set forth in the existing record and oral argument would not aid the decisional process. *See United States v. Yearwood,* 863 F.2d 6, 7 (4th Cir.1988) (recognizing that "[a] hearing is not required…on a § 2255 motion if the record of the case conclusively shows that petitioner is entitled to no relief").

2. 21 U.S.C. § 845b has since been recodified at 21 U.S.C. § 861.

violation of 21 U.S.C. §§ 841(a)(1) and 859(a) (Counts 14 through 18); (vii) distribution of a controlled substance in or near a school, in violation of 21 U.S.C. §§ 841(a)(1) and 860 (Counts 19 and 20); and (viii) four additional crack cocaine charges, in violation of 21 U.S.C. § 841(a)(1) (Counts 21 through 25).

By the time defendant's trial commenced on May 4, 1992, all of his co-conspirators had pled guilty to various of the charged offenses. And, on the first day of trial, the government presented the testimony of two of these co-conspirators, as well as the testimony of an individual defendant had recruited as a minor to distribute crack cocaine in furtherance of the conspiracy. The testimony of these individuals described specific details of the charged conspiracy, including (i) the quantity of crack cocaine distributed, (ii) the procedures used by co-conspirators to obtain powder cocaine and later cook it into crack cocaine, (iii) the locations where the drug trafficking activities occurred, and (iv) the fact that defendant had used firearms in connection with the conspiracy.

On the second day of trial—May 5, 1992—defendant pled guilty to Counts 1 and 5 of the Indictment, charging him with conspiracy to manufacture and distribute crack cocaine, in violation of 21 U.S.C. § 846 (Count 1), and carrying a firearm during a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Count 5). In the course of the plea hearing, defendant signed a written plea agreement waiving his appeal rights,[3] as well as a written statement of facts describing, *inter alia,* (i) the quantity of crack cocaine associated with the drug conspiracy, (ii) the firearms used in connection with the conspiracy, and (iii) the production and distribution of crack cocaine by named co-conspirators within specific school zones in Prince William County, Virginia. In the course of the plea colloquy, defendant confirmed the accuracy of the statement of facts, acknowledged that his guilty plea was knowing and voluntary, and indicated that he understood that he was waiving his appeal rights.[4] Then, following the plea hearing, the remaining counts of the Indictment against defendant were dismissed on the government's motion.

At the subsequent sentencing hearing on July 31, 1992, defendant's motion for a reduction in his offense level for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 was granted based, in part, on his allocution at sentencing. This, in turn, resulted in a total offense level of 42 and a criminal history category of III. Defendant was then sentenced to consecutive terms of imprisonment of 360 months on Count 1 and 60 months on Count 5, for a total of 420 months imprisonment, to be followed by five years of supervised release.

Thereafter, defendant filed an appeal with the Court of Appeals for the Fourth Circuit, arguing only that the 420–month sentence imposed was excessive.[5] On February 17, 1993, the Fourth Circuit dis-

---

**3.** Specifically, in the plea agreement, defendant waived his right "to appeal the sentence (or the manner in which it was determined) on the grounds set forth in Title 18, United States Code, Section 3742 or on any ground whatever."

**4.** *See* Plea Transcript, p. 229 (where defendant was asked "do you understand also that under the guidelines you would have the right to appeal your sentence, but in your plea

agreement, you have waived that right of appeal," to which defendant responded "yes").

**5.** Finding no meritorious grounds for appeal, defendant's counsel filed a brief with the Fourth Circuit pursuant to *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), indicating that defendant believed his sentence was too severe, but noting that defendant had waived his appeal rights.

missed the appeal based on defendant's knowing and voluntary waiver of his appeal rights, noting that there was nothing in the record to indicate that defendant's sentence "violates his constitutional rights or otherwise justifies appellate review despite his appeal waiver." *See United States v. Jackson,* 986 F.2d 1416, 1993 WL 39031, at *2 (4th Cir.1993).

Approximately three years later, on January 25, 1996, defendant filed a motion for reduction and modification of sentence, pursuant to 18 U.S.C. § 3582(c)(2) and the federal sentencing guidelines, this time arguing that his sentence was imposed in violation of the laws of the United States. By Order dated November 7, 1996, defendant's pleading was construed as a motion to vacate, set aside or correct sentence, pursuant to 28 U.S.C. § 2255, and the government was directed to file a response, which it later did on March 12, 1997. *See United States v. Jackson,* Criminal No. 92–75–A (E.D.Va. Nov. 7, 1996) (Order).[6] On March 28, 1997, however, defendant's motion was dismissed prior to any ruling on the merits, based on defendant's March 17, 1997 letter request that the motion be withdrawn. *See United States v. Jackson,* Criminal No. 92–75–A (E.D.Va. Mar. 28, 1997) (Order).

■ The following month, in April 1997, defendant apparently contacted the National Legal Professional Associates (NLPA) seeking assistance in the preparation and filing of a § 2255 motion in this case. It appears from the record that NLPA advised defendant, by letter, that any § 2255 motion would need to be completed before the April 24, 1997 filing deadline applicable under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104–132, 110 Stat. 1214 (1996).[7] It further appears that on April 17, 1997, H. Wesley Robinson, the Director of Case Analysis and Research for NLPA, wrote to Eric. R. Nordman, an attorney, to convey draft research relating to a possible § 2255 motion to be filed in this case on behalf of defendant. A few days later, on April 22, 1997, defendant sent a registered envelope from FCI Schuylkill, Pennsylvania, the facility where he was then incarcerated, to the Clerk's Office in this district. This envelope was received by the Clerk's Office on April 24, 1997, as confirmed by a signed registered mail receipt submitted by defendant together with the instant motion. According to the mailroom records at FCI Schuylkill, defendant also sent a registered envelope to Gerald Smagala at the U.S. Attorney's Office on April 24, 1997, and, indeed, another signed registered mail receipt submitted by defendant reveals that the U.S. Attorney's Office received an envelope from defendant on April 28, 1997. Unfortunately, there is no record of what, if anything, was ever contained in these envelopes; nor is there a docket entry of any filings received by the Clerk's Office in April 1997, as the relevant portions of the typewritten docket sheet maintained by

---

6. Inexplicably, defendant's January 25, 1996 motion, the subsequent November 7, 1996 Order, and the government's March 12, 1997 response are not included in the official case file archived by the Clerk's Office; nor are they reflected on the typewritten paper docket sheet maintained by the Clerk's Office. Yet, copies of these documents are attached to the government's February 27, 2003 response to the instant motion, as directed, and it is clear that all three documents were indeed filed in this case.

7. Typically, a motion for post-conviction relief under 28 U.S.C. § 2255 must be filed within one year of the date the conviction becomes final. In this regard, a defendant whose sentence became final prior to the effective date of AEDPA—April 24, 1996—was required to file any motions for post conviction relief within one year of that date, *i.e.,* on or before April 24, 1997. *See United States v. Pregent,* 190 F.3d 279, 284 (4th Cir.1999) (citing *Brown v. Angelone,* 150 F.3d 370, 375 (4th Cir.1998)).

the Clerk's Office appear to be missing from the court file.[8] Defendant now contends the envelopes contained copies of a timely § 2255 motion to be filed with the Clerk's Office, but he claims to have lost his own record copy of the alleged filing during a subsequent institutional transfer. In any event, the Court took no action with regard to what, if anything, defendant mailed to the Clerk's Office in April 1997.

■ Approximately three years passed and then, on March 28, 2000, defendant filed a motion for reduction and modification of sentence pursuant to 18 U.S.C. § 3582(c)(2). Unlike defendant's earlier filings, this motion is contained in the official case file and also is reflected on the paper docket sheet maintained by the Clerk's Office. Ultimately, defendant's motion was denied by Order dated December 27, 2000. Yet, on December 28, 2000, before defendant had received a copy of the December 27, 2000 Order, he filed a supplemental motion for reduction and modification of sentence. This motion, construed as a motion to reconsider, was likewise denied by Order dated January 16, 2001. On the same date—January 16, 2001—defendant filed another motion to reconsider pursuant to Rule 59(e), Fed. R.Civ.P., and 18 U.S.C. § 3582(c)(2), claiming that he was entitled to a reduction in his sentence in light of Amendment 591 to the United States Sentencing Guidelines.[9] After this motion was later denied by Order dated April 25, 2001,[10] defendant filed an appeal with the Fourth Circuit, which ultimately affirmed on October 26, 2001. *See United States v. Jackson–Bey*, 89 Fed. Appx. 816, 2001 WL 1302131 (4th Cir.2001) (Unpublished Opinion).[11]

In June 2002, defendant wrote to the Clerk's Office inquiring about the status of the § 2255 motion that he claimed had been filed in 1997. The Clerk's Office responded to defendant's letter on July 1, 2002, explaining that there was no record of any such motion having been filed in this case in 1997. Then, on July 31, 2002, defendant produced the signed registered mail receipts from the Clerk's Office and the U.S. Attorney's Office discussed earlier. He also requested the appointment of

---

**8.** Indeed, the docket sheet contains various filing entries from February 20, 1992 until November 4, 1992, followed by an 8–year gap in time, with the next entry being recorded on March 28, 2000.

**9.** Amendment 591, effective November 1, 2000, was promulgated to resolve a circuit split "regarding whether the enhanced penalties in § 2D1.2 (Drug Offenses Near Protected Locations or Involving Underage or Pregnant Individuals) apply only in a case in which the defendant was convicted of an offense referenced to that guideline or, alternatively, in any case in which the defendant's relevant conduct included drug sales in a protected location or involving a protected individual." Amendment 591, U.S.S.G., Appendix C. Following Amendment 591, the enhanced penalties under § 2D1.2 were to be applied "only in a case in which the defendant is convicted of a statutory violation of drug trafficking in a protected location or involving an underage or pregnant individual...or in a case in

which the defendant stipulated to such a statutory violation." U.S.S.G. § 2D1.2, Application Note 1.

**10.** Specifically, because defendant stipulated in the signed statement of facts filed together with his plea agreement that his drug trafficking activities involved underage individuals and occurred near protected school grounds, application of a two-level enhancement under § 2D1.2, even after Amendment 591, was proper. *See* U.S.S.G. § 2D1.2, Application Note 1 ("[t]his guideline applies...in a case in which the defendant stipulated to such a statutory violation").

**11.** While the appeal was pending, defendant filed a motion with the Fourth Circuit requesting authorization to file a successive motion for post-conviction relief under § 2255, which motion the Fourth Circuit denied on July 25, 2001. *See United States v. Jackson–Bey*, No. 01–927 (4th Cir. July 25, 2001) (Order).

counsel to assist him in the preparation of another § 2255 motion in this matter, given that his first motion—allegedly filed in 1997—had apparently been lost.

By Order dated December 18, 2002, defendant's request for the appointment of counsel was denied. *See United States v. Jackson–Bey,* Criminal No. 92–75–A (E.D.Va. Dec. 18, 2002) (Order). Yet,· given the unusual circumstances of this case, defendant was granted leave to file promptly a motion to vacate, set aside or correct sentence pursuant to § 2255, which he eventually did on January 16, 2003. Defendant's motion, construed liberally,[12] asserts three grounds for relief, namely (1) that ineffective assistance of counsel rendered his plea of guilty unknowing and involuntary; (2) that certain sentencing enhancements were improperly applied under the guidelines, and (3) that he is actually innocent of the crimes to which he pled guilty. The government filed a response to defendant's motion on February 27, 2003, as directed, and defendant then filed a reply brief on March 28, 2003. Accordingly, the matter is now ripe for disposition.

## II.

Before addressing defendant's substantive claims, two threshold procedural questions merit brief discussion, namely (i) whether the instant motion constitutes an unauthorized second or successive § 2255 motion under the statute, and (ii) whether the instant motion, though filed years after the April 24, 1997 filing deadline, should be considered timely under equitable tolling principles.

■ The first of these threshold procedural issues is easily resolved: Before a district court may consider a second or successive § 2255 motion, it must first be certified by a panel of the appropriate court of appeals to contain:

1. newly contained evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

2. a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255. Here, the government contends that the instant motion is an uncertified second or successive § 2255 petition given that defendant's January 1996 motion for reduction and modification of sentence was construed as a motion to vacate, set aside or correct sentence, pursuant to 28 U.S.C. § 2255. *See supra* p. 625. The government also correctly notes that the Fourth Circuit denied defendant's request for authorization to file a successive motion for post-conviction relief on July 25, 2001. *See supra* n. 11. Yet, in light of recent Fourth Circuit precedent, discussed below, neither of these facts renders the instant motion a second or successive § 2255 motion requiring certification by the Fourth Circuit.

Indeed, prior to the Fourth Circuit's decision in *United States v. Emmanuel,* 288 F.3d 644 (4th Cir.2002), courts in this circuit routinely construed motions filed by *pro se* defendants challenging their federal convictions—however denominated by the defendants—as motions for habeas relief under § 2255. *Id.* at 647.[13] However, in

---

**12.** *See, e.g., De'Lonta v. Angelone,* 330 F.3d 630, 633 (4th Cir.2003) (recognizing that "the allegations in pro se complaints should be liberally construed"); *Sas v. State of Maryland,* 334 F.2d 506, 517 (4th Cir.1964) (recog-

nizing that *pro se* petitions for habeas corpus should be liberally construed).

**13.** *See, e.g., U.S. v. Wheedleton,* 188 F.3d 505, 1999 WL 651826 (4th Cir.1999) (reviewing a

light of the strict limitations placed on the filing of successive habeas petitions following the enactment of AEDPA, the Fourth Circuit held in *Emmanuel* that district courts may not *sua sponte* recharacterize motions not denominated as § 2255 motions without first giving defendants notice of the potential adverse consequences of such a recharacterization and an opportunity either (i) to avoid procedural default by requesting that the motion be judged as initially denominated and not as a § 2255 motion, or (ii) to amend the pleading to take full advantage of the opportunity to advance claims for habeas relief under § 2255. *See Emmanuel*, 288 F.3d at 647, 649.

Here, defendant did not denominate his January 1996 motion for reduction and modification of sentence as a motion for habeas relief under § 2255. Yet, the motion was construed as a § 2255 petition by Order dated November 7, 1996. *Emmanuel* now teaches that this *sua sponte* recharacterization of defendant's motion was improper and thus, the filing of this 1996 motion, even had it been decided on the merits,[14] does not render the instant motion a second or successive § 2255 petition requiring prior certification from the Fourth Circuit, as the government argues.

■ Defendant must still overcome the additional filing requirements set forth in § 2255. In this regard, it is clear that the one-year filing requirement applicable to § 2255 motions is not jurisdictional; rather, as circuit authority makes clear, it is a statute of limitations that in extraordinary circumstances may be subject to equitable tolling principles.[15] Yet, the Fourth Circuit has recognized that equitable tolling "must be reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir.2000). Thus, the extent to which actions outside a defendant's control contributed to a filing delay must be considered when determining whether to apply the doctrine of equitable tolling. *See, e.g., United States v. Prescott*, 221 F.3d 686 (4th Cir.2000) (allowing equitable tolling where prisoner failed to receive actual or constructive notice of the Supreme Court's denial of his writ of certiorari until after the one-year statute of limitations had expired).

■ Here, defendant alleges, with persuasive documentary evidence in the form of signed registered mail receipts, that he submitted a pleading—allegedly a § 2255 motion for habeas relief—on April 24, 1997, the final day of his window of opportunity under § 2255. And, it is clear that circumstances beyond defendant's control may have interfered with the timely filing and disposition of this pleading, *i.e.*, the pleading may have been misplaced by the Clerk's Office before it was officially filed or, alternatively, the pleading may have been misplaced after it was filed but before an appropriate resolution was

---

district court's decision to recharacterize a motion filed by a defendant pursuant to 18 U.S.C. § 3582 as a motion for § 2255 habeas relief).

**14.** As previously noted, the motion was withdrawn at defendant's request prior to any ruling on the merits.

**15.** *See Harris v. Hutchinson*, 209 F.3d 325, 329–330 (4th Cir.2000) (holding that § 2244 time limits are statutes of limitations and therefore subject to equitable tolling); *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir.1999) (holding that AEDPA's filing provision is not jurisdictional, but is instead a statute of limitations that can be equitably tolled); *Miller v. New Jersey State Department of Corrections*, 145 F.3d 616, 619 n. 1 (3d Cir.1998) (ruling that the one-year limitation period for § 2255 cases is subject to equitable tolling).

reached. Moreover, because relevant portions of the typewritten docket sheet maintained by the Clerk's Office are missing, it may never be known if defendant actually filed a timely § 2255 motion on April 24, 1997 or, if he did, why the motion thereafter disappeared from the case file. In these circumstances, given that defendant's own conduct did not lead to the inexplicable long lapse of time in this case, "it would be unconscionable to enforce the limitation period against the [defendant] and gross injustice would result" by doing so. *Harris*, 209 F.3d at 330. And, although granting defendant a six-year extension of time in which to file his § 2255 motion is highly unusual, so, too, are the circumstances of this case. In other words, the facts presented here are sufficiently extraordinary as to warrant application of the doctrine of equitable tolling. *See id.* Accordingly, the merits of each of defendant's substantive § 2255 claims are separately addressed below.

### III.

■ Defendant's first substantive claim is that his attorney provided ineffective assistance in the course of the plea negotiations and plea hearing in this case.[16] A two-prong test applies to ineffective assistance of counsel claims. *See Strickland v. Washington*, 466 U.S. 668, 688–89, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *U.S. v. Lurz*, 666 F.2d 69, 78 (4th Cir.1981). Specifically, a defendant must show, first, that counsel's performance "fell below an objective standard of reasonableness," and second, that "the deficient performance prejudiced the defense." *Strickland*, 466 U.S.

at 688, 104 S.Ct. 2052. In this regard, to demonstrate prejudice, defendant must overcome the strong presumption that counsel rendered "adequate assistance and made all significant decisions in the exercise of reasonable judgment." *Id.* at 690, 104 S.Ct. 2052. Moreover, where a defendant challenges the voluntariness of a guilty plea based on alleged ineffective assistance of counsel,[17] as here, the defendant must "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *see also Beck v. Angelone*, 261 F.3d 377, 394 (4th Cir. 2001).

■ Defendant first claims that his counsel was ineffective in failing to advise him of the elements of the firearms offense to which he pled guilty, namely carrying a firearm during a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Count 5). In this regard, defendant contends that had he been advised that the government was required to prove at trial that defendant engaged in "active employ[ment]" of a firearm, according to the standard subsequently announced by the Supreme Court in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), he would not have pled guilty to Count 5. Defendant's claim in this regard fails for several reasons.

First, a review of the plea colloquy and plea papers reveals that, contrary to defendant's contentions, he was fully apprised of the elements of the offense charged against him in Count 5, as well as

---

**16.** It should be noted that defendant stated under oath in the course of the plea hearing that he was fully satisfied with the advice and counsel he received in this case.

**17.** A plea of guilty is only constitutionally valid to the extent it is a voluntary and "intelligent act done with sufficient awareness of

the relevant circumstances and likely consequences." *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *Beck v. Angelone,* 261 F.3d 377, 394 (4th Cir.2001) (recognizing that a plea of guilty must constitute a voluntary and intelligent choice among alternatives).

the applicable maximum penalties. *See* Plea Transcript, pp. 220–22. Nor can defendant plausibly argue that counsel was ineffective in failing to advise him of the principles enunciated in *Bailey,* a case not yet decided at the time of defendant's plea. In any event, as the plea colloquy reflects and the plea papers confirm, defendant admitted to having sold firearms as a means of generating money to purchase drugs; he also admitted to having directed others to engage in this practice, as well. Yet, in the course of the plea hearing, defendant disputed, as he does here, whether such actions constitute the requisite "use" of a firearm under the statute.[18] This argument was properly rejected at the time of the plea hearing and remains meritless today, even after *Bailey,* the case relied on by defendant in support of his argument. *See Bailey,* 516 U.S. at 146, 148, 116 S.Ct. 501 (recognizing that bartering firearms for drugs constitutes "use" of a firearm under § 924(c)(1)); *see also Muscarello v. United States,* 524 U.S. 125, 135, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998) (same). There is, in short, no basis to conclude that counsel's performance was deficient in this respect.

Defendant also cannot establish the requisite prejudice as to his first ineffective assistance of counsel claim, as he was fully advised by the Court in the course of the plea hearing of the elements of the firearms offense charged against him in Count 5.[19] Moreover, defendant's claim that he would not have pled guilty had his counsel presciently advised him of *Bailey*'s holding is flatly unsupportable, as that case only served to make even clearer that the facts and evidence of defendant's firearms "use" in this case fall squarely within the ambit of § 924(c)(1). *See supra.* So, it is implausible for defendant to claim that knowledge of *Bailey* would have led him to reject the government's plea offer.

It is also clear that far from suffering prejudice, defendant actually benefitted substantially from his plea agreement. Specifically, defendant avoided substantial additional periods of incarceration by pleading guilty to Counts 1 and 5 of the Indictment, as his plea resulted in the dismissal of two additional firearms charges which, if proven at trial, would each have added a mandatory consecutive term of imprisonment of 20 years to defendant's sentence. Also dismissed as a result of the plea agreement were various other drug trafficking charges, including charges of (i) employment of a minor to distribute crack cocaine, (ii) distribution of crack cocaine to a person under the age of 21, and (iii) distribution of controlled substances in or near a school. The testimony of defendant's cooperating co-conspirators offered during the first day of trial, and defendant's own admissions made in the course of the plea hearing, support a finding of guilt on each of these dismissed charges. Simply put, conviction on even some of these additional charges—which are fully supported by the record evidence—would no doubt have resulted in a sentence exceeding the 420 months received by defendant in this case.

**18.** Defendant also disputed certain details of the government's representation of the facts underlying the firearms charge, thus causing the statement of facts to be amended to delete reference to a 10 millimeter handgun and to change the description of a 9 millimeter handgun to a .38 caliber handgun.

**19.** Specifically, defendant was advised that the government "would have to show that on or about mid March 1991, you possessed in connection with a drug trafficking offense— namely the conspiracy charged in Count 1— and used two 9–millimeter semiautomatic pistols, one 10–millimeter semiautomatic pistol and two 38–caliber semiautomatic pistols." Plea Transcript, p. 231. Defendant then clearly and unequivocally indicated that he understood that these were the elements of the offense charged against him in Count 5.

■ Defendant next claims that his counsel was ineffective in failing to advise him that the admissions and stipulations made by him in the course of the plea hearing and in the statement of facts could later be used against him to establish his sentence under the United States Sentencing Guidelines. Unfortunately, it is unclear precisely what defendant was advised by his counsel in this regard, as the record does not include a sworn affidavit from counsel.[20] Yet, even assuming counsel did not explicitly advise defendant that his admissions and stipulations in support of his plea could be used to determine the appropriate range of imprisonment under the sentencing guidelines, it is difficult to imagine that defendant could have concluded otherwise. Indeed, it is simply not plausible for defendant to claim that he did not know that the signed stipulations of fact that were a part of his plea agreement would be the basis for the determination of his sentencing guideline range.

Defendant is also unable to establish that he suffered any prejudice with respect to this claim given that the testimony of his co-conspirators at trial, as well as the record as a whole, fully supports not only the admissions and stipulations made by defendant in connection with his plea agreement, but the additional dismissed charges, as well. Moreover, as noted, far from suffering prejudice, defendant received substantial benefits as a result of the stipulations included in his plea agreement. Defendant's admissions and stipulations also resulted in a reduction of his offense level at sentencing for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1.

■ Defendant next claims that his counsel was ineffective in failing to inform him of a circuit split concerning the two-level enhancement applied to defendant relating to drug offenses occurring near protected locations or involving underage or pregnant individuals, pursuant to U.S.S.G. § 2D1.2. *See supra* n. 9. In this regard, it appears the circuits were indeed split in 1992 over whether the enhanced penalties in § 2D1.2 were applicable only in cases in which the defendant was convicted of an offense specifically referenced in that guideline or, alternatively, in any case in which the defendant's relevant conduct included drug sales in a protected location or involving a protected individual, as occurred here. *See* Amendment 591, U.S.S.G., Appendix C. The Fourth Circuit had not directly spoken on the issue at the time of defendant's plea. In 1994, however, the Fourth Circuit rejected the application of a § 2D1.2 enhancement to a conviction for an offense not listed in the Commentary to that guideline. *See United States v. Locklear*, 24 F.3d 641, 648 (4th Cir.1994) (limiting the application of § 2D1.2 to 21 U.S.C. §§ 859, 860, and 861, the "Statutory Provisions" listed in the Commentary).

Again, without an affidavit from defense counsel, it is not possible to determine precisely what, if anything, counsel advised defendant regarding application of the § 2D1.2 enhancement. But even assuming counsel failed to advise defendant of the apparent circuit split in existence at the time of defendant's plea, this failure simply does not constitute a breach of the applicable professional standard by defense counsel. Nor did counsel violate this standard in failing to anticipate the Fourth Circuit's decision in *Locklear*.[21] To be sure, counsel

---

**20.** The record does not reflect the reasons for the absence of an affidavit from defense counsel.

**21.** *See, e.g., United States v. Smith*, 64 Fed. Appx. 902, 903, 2003 WL 21357326, *1 (4th Cir.2003) (holding that "counsel was not ineffective for failing to anticipate the Supreme Court's *Apprendi* decision"); *Kornahrens v.*

clearly had a duty to advise defendant as to the possible application of the sentencing guidelines to the facts of this case. And significantly, in the course of the plea colloquy, defendant was asked by the Court whether he and his counsel had "discussed how the sentencing guidelines might apply to [this] case," to which defendant responded that he had indeed engaged in such discussions with his counsel.

 In any event, even assuming that counsel's performance fell short in this regard, defendant cannot establish the requisite resulting prejudice. First, given the seriousness of this case, the quantity and quality of the evidence against defendant, and the significant offense level total applicable to this case even excluding the § 2D1.2 enhancement, it is simply not plausible for defendant to argue that he would have rejected the government's plea offer and insisted on proceeding to trial had he had prior knowledge of the possible application of the two-level § 2D1.2 enhancement, or knowledge of the apparent circuit split regarding application of that guideline section in existence at the time of his plea. *See Hill*, 474 U.S. at 59, 106 S.Ct. 366 ( defendant must "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial"). Indeed, the two-level enhancement under § 2D1.2 would surely have applied had defendant opted to re-

ject the plea agreement and insist on proceeding to trial, as the record evidence, including the testimony of defendant's co-conspirators, fully supports the additional dismissed charges of (i) employment of a person under the age of 18 to distribute crack cocaine, in violation of 21 U.S.C. § 845b(a)(1) and (ii) distribution of a controlled substance in or near a school, in violation of 21 U.S.C. §§ 841(a)(1) and 860. Under the guidelines in effect at the time of defendant's plea and sentence, and under the current guidelines, as well, convictions on either of these additional dismissed charges would have warranted application of the § 2D1.2 enhancement[22] and likely would have resulted in a sentence substantially higher than that received by defendant in this case.

Defendant's final ineffective assistance claim is that his counsel failed to explain the implications of the waiver of his appeal rights. In this regard, defendant claims that his appeals waiver foreclosed a meritorious challenge to his § 924(c)(1) firearm conviction. Again, without the aid of an affidavit from defense counsel, it is impossible to determine precisely what counsel advised defendant with respect to the waiver of his appeal rights. Yet, even assuming counsel did not adequately inform defendant of his appeal rights, and of the resulting effect of the waiver of these rights, defendant cannot establish the requisite prejudice as to this claim given that

*Evatt*, 66 F.3d 1350, 1360 (4th Cir.1995) (holding that counsel does not perform deficiently by failing to anticipate new rules of law); *see also Strickland*, 466 U.S. at 690, 104 S.Ct. 2052 (recognizing that "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, *viewed as of the time of counsel's conduct* ") (emphasis added).

22. Indeed, the enhancement clearly applies, both now and at the time of defendant's sentencing, to cases in which a defendant is

convicted of a statutory violation of drug trafficking in a protected location or involving an underage or pregnant individual. *See* U.S.S.G. § 2D1.2, Application and Historical Notes. It should also be noted that under the current version of the sentencing guidelines, a signed stipulation of facts such as was entered here is sufficient to warrant application of the two-level § 2D1.2 enhancement. *See* U.S.S.G. § 2D1.2, Application Note 1 ("[t]his guideline applies...in a case in which the defendant stipulated to such a statutory violation").

these issues were thoroughly reviewed with defendant in the course of the plea hearing. Indeed, a review of the plea colloquy reflects that defendant was fully informed of, and acknowledged that he understood, the fact that he had waived his appeal rights as part of the plea agreement. *See supra* n. 4. Additionally, because defendant's conviction was proper in all respects and fully supported by the record evidence, any challenge to the § 924(c)(1) firearm conviction, even had it been made, would properly have been rejected by the Fourth Circuit. *See Bailey,* 516 U.S. at 146, 148, 116 S.Ct. 501 (recognizing that bartering firearms for drugs constitutes "use" of a firearm under § 924(c)(1)).

In sum, when viewed in the totality of the circumstances, and attaching due weight to the "strong presumption" that counsel rendered "adequate assistance and made all significant decisions in the exercise of reasonable judgment," *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052, defendant's claim that counsel's performance rendered his plea of guilty unknowing and involuntary must be denied on all grounds.

## IV.

▉▉▉ Defendant's second substantive § 2255 claim—that certain sentencing enhancements were improperly applied to increase his offense level and thus increase his sentence—merely reasserts claims already raised in earlier motions. Indeed, each of defendant's arguments pertaining to the guidelines enhancements applied at sentencing have already been fully considered and rejected. *See United States v. Jackson–Bey,* Criminal No. 92–75–A (E.D.Va. Apr. 25, 2001) (Order); *United States v. Jackson–Bey,* Criminal No. 92–75–A (E.D.Va. Dec. 27, 2000) (Order). Moreover, defendant has failed to establish any good cause—and none exists—to reexamine any of these previous rulings, which, as previously noted, were subse-

quently affirmed by the Fourth Circuit on October 26, 2001. *See United States v. Jackson–Bey,* 89 Fed.Appx. 816, 2001 WL 1302131 (4th Cir.2001) (Unpublished Opinion).

## V.

▉▉▉▉ Defendant's final claim is that he is actually innocent of the firearms charge to which he pled guilty (Count 5). To establish actual innocence, a defendant must demonstrate that "in light of all the evidence,...it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). And, in the context of a conviction under 18 U.S.C. § 924(c)(1), it is important to remember that the term actual innocence "means factual innocence, not merely legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623–24, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (citations removed). In this regard, any admissible evidence may be considered in resolving an actual innocence claim, not merely the evidence presented during the course of the plea colloquy. *Id.* at 624, 118 S.Ct. 1604. Moreover, as recognized by the Supreme Court, in cases where, as here, the government has foregone more serious charges in the course of plea bargaining, "petitioner's showing of actual innocence must also extend to those charges," as well. *Id.*

▉▉▉▉ In this case, defendant claims he is actually innocent of Count 5 because his trade in firearms was incidental to his drug trafficking activities and thus, did not constitute the requisite "use" of a firearm under § 924(c)(1). Defendant is simply mistaken in this regard, both factually and legally. Thus, the testimony of his co-conspirators, presented at trial prior to his plea, establishes that defendant bartered firearms for cocaine during the course of the conspiracy. Defendant himself admit-

ted in the course of the plea hearing and in the signed statement of facts that he sold firearms in order to generate funds to purchase cocaine, and that he directed others (one of whom was still a minor when he testified against defendant at trial) in the purchase and distribution of both cocaine and other firearms. Under the interpretation of § 924(c)(1) announced in *Bailey*, bartering firearms for drugs indeed constitutes "use" of a firearm under the statute. *Id.* 516 U.S. at 146, 148, 116 S.Ct. 501. Thus, there is ample evidence in the record supporting not only defendant's § 924(c)(1) firearms conviction, but also the additional firearms charges that were dismissed pursuant to the plea agreement. *See Bousley*, 523 U.S. at 624, 118 S.Ct. 1604 (requiring that defendant establish actual innocence as to additional charges dismissed in the course of plea bargaining). For this reason, defendant's claim of actual innocence must be rejected.

An appropriate Order will issue.